**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **SEP 2 5 2014**

*Madsen, C.J.*
CHIEF JUSTICE

This opinion was filed for record
at 8:00Am on Sept. 25, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| STATE OF WASHINGTON,<br><br>Petitioner,<br><br>v.<br><br>JOSEPH NJUGUNA NJONGE,<br><br>Respondent. | NO. 86072-6<br><br>EN BANC<br><br>Filed _SEP 2 5 2014_ |

STEPHENS, J.—We granted review of the public trial issues in this case, most notably whether the portion of jury selection in which the court excuses jurors for hardship is a proceeding to which the public trial right attaches. The Court of Appeals concluded that it is, and that Joseph Njonge's public trial right was violated when the trial court purportedly excluded observers during hardship excusals. Accordingly, the Court of Appeals remanded for a new trial without reaching Njonge's other assignments of error, including claims that the trial court improperly excluded a family member of the victim (who was also a witness) and members of the press from portions of voir dire. Based on our review of the record, we conclude the trial court did not close proceedings in violation of

Njonge's public trial right. Accordingly, we reverse the Court of Appeals and remand to that court to address Njonge's additional assignments of error on which we did not grant review.

## FACTS AND PROCEDURAL HISTORY

Joseph Njonge worked as a nursing assistant at an assisted living facility. In 2008, he was charged with first degree murder in connection with the death of Jane Britt, the spouse of a resident at the facility.

Pretrial proceedings began on June 2, 2009. During discussion of a pretrial motion to exclude witnesses from trial, the prosecutor asked the trial court if one of the victim's family members, who would also later be called as a witness, could stay for voir dire. The court disallowed it, reasoning:

> [W]e are in very cramped quarters for jury selection, and I think about the only place for visitors to sit is going to be in a little anteroom out there . . . .
>     The other thing is, quite frankly, the jurors will be seeing that face throughout the entire process and maybe making some connections with that person when the person gets on the stand. I don't think it's fair; so, I am not going to allow it.

Verbatim Report of Proceedings (VRP) (June 2, 2009) at 46.

The court later explained to counsel and Njonge how it intended to conduct jury selection, noting:

> We have received permission to get more than the standard 50 [jurors]. I think we are getting 65. That necessitates a rearrangement of our courtroom, and my Bailiff put out a map for you guys as to how we are going to get this number in. The first two benches must remain clear at all times.
>     So, we will have jurors seated in front of the jury box. The court reporter is going to move over here; we have a few jurors here. It's kind of a little awkward, but it's more of a jury selection in the round process that way.

*Id.* at 90-91. As the day's session concluded, the court addressed observers in the courtroom:

> Just let me say for the people who are observing. You are certainly welcome to observe. Tomorrow when we have the jury selection, there will not be room for all of you. What we are going to do to allow people to observe is check with the fire marshall . . . and make sure that we can keep those first swinging doors open. And if we can do that, then we will allow some people to observe if they wish to do so during jury selection by sitting in that kind of entry hall, if we can do that.
> But, otherwise, as you can see, we are already putting chairs up here to accommodate the jury. We may be able to have chairs out there; we may not. We may be able to have the doors open without chairs. We are going to find that out. The chance of all you being able to be here and observe are slim to none during the jury selection process.

*Id.* at 105-06. The court recessed for the day a few minutes later.

Jury selection began the next day, June 3, 2009. The court called the panel into the courtroom. The record contains no mention about the presence or absence of spectators in the courtroom. Once the venire was settled, the court welcomed the members and explained the importance of jury duty and what role juries play in our basic system of justice. VRP (June 3, 2009) at 9-10. The panel members had previously completed a case-specific questionnaire that included questions about whether they had heard of the case and could be fair. VRP (June 2, 2009) at 85-86; VRP (June 3, 2009) at 2-3, 7, 18. The prospective jurors were sworn in. VRP (June 3, 2009) at 13. The court then conducted its hardship excusal process, which took up most of the morning and resulted in the excusal of several jurors. *Id.* at 21-53. When the parties reconvened after the lunch recess for the afternoon session, the following exchange took place:

[Prosecutor]: Some family members who are not witnesses stuck around this morning, hoping there might be some seats later, and your bailiff informed them at lunch since some people were excused there were some. So I don't know if the Court has any problem with that. They are not witnesses. We tried to figure out a spot that would be in a row that basically has no jurors. So that second row over there only has Juror 30. Is that okay with the Court if they are in there?

THE COURT: Actually, that seemed to be a better idea. We checked with the fire department. They wouldn't let us leave the doors open for visitors to come in. Let's move No. 30 over next to 34, and then we can have visitors sitting in the second row there.

*Id.* at 54-55. Jury selection continued for the remainder of the day, with a few additional hardship discussions followed by questioning from counsel on bias and the like. *See id.* at 54-146. Before resuming voir dire the following day, the court told the jury that the television camera crew would not be permitted to stay in the courtroom during voir dire:

[The Court]: The other thing is as some of you who were here know that one of the TV stations wants to film the case.

. . . .

And I have no objection to them filming, but they did not ask my permission before they came into my courtroom with a camera, which is bad form. I have no objection to them filming, but they cannot during jury selection.

So, I told them they had to leave until after jury selection. And it looks, I would let them know when we are complete with jury selection, and they want to film opening statement.

VRP (June 4, 2009) at 4.

There were no additional discussions on the record concerning public or press access. As the Court of Appeals observed, "The record does not show any observer being asked to leave the courtroom or any objection to the voir dire procedure by either the parties or any observers. The court clerk's minutes reflect

no order relating to a closure." *State v. Njonge*, 161 Wn. App. 568, 572, 255 P.3d 753 (2011).

Trial concluded on June 17, 2009, with a jury convicting Njonge of the lesser-included offense of second degree murder. Clerk's Papers (CP) at 65. Njonge appealed his conviction, and the Court of Appeals ordered a new trial, reasoning that the trial court improperly closed the courtroom during the hardship excusals. *Njonge*, 161 Wn. App. at 570. Because it resolved the case in this way, the court did not consider Njonge's other public trial claims concerning the exclusion of the family member witness and of the camera crew. Nor did the appellate court address Njonge's assignments of error unrelated to his public trial claims. *Id.* at 580. The State filed a petition for review, which we granted on the public trial issue only.[1] *State v. Njonge*, 176 Wn.2d 1031, 299 P.3d 19 (2013).

## ANALYSIS

Since 2009, when this court announced its decisions in *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009) and *State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009), numerous public trial cases have explored the contours of our jurisprudence. To date, our cases have recognized several basic principles. A defendant's right to a public trial is guaranteed by article I, section 22 of our state constitution and the Sixth Amendment to the federal constitution. *State v. Bone-*

---

[1] The petition for review was filed on June 3, 2011. We stayed consideration of the petition pending our decisions in several public trial cases. While consideration was stayed, the State filed a supplemental petition to address the "experience and logic" test adopted in *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012). Suppl. Pet. for Review at 3.

*Club*, 128 Wn.2d 254, 256, 906 P.2d 325 (1995); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804, 100 P.3d 291 (2004). The right to a public trial is not absolute, as a courtroom may be closed to the public if the trial court justifies the closure by conducting an on-the-record balancing of several factors, commonly referred to as the *Bone-Club* factors. *Bone-Club*, 128 Wn.2d at 258-59; *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005); *State v. Easterling*, 157 Wn.2d 167, 175, 137 P.3d 825 (2006).[2] The right to public trial extends beyond the evidence-taking portion of trial proceedings and includes pretrial phases such as suppression hearings, hearings on motions to sever, and voir dire. *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (suppression hearing); *Bone-Club*, 128 Wn.2d 254 (same); *Easterling*, 157 Wn.2d at 177 (pretrial motion to sever); *Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010) (voir dire); *Orange*, 152 Wn.2d 795 (same).

---

[2] The court in *Bone-Club* identified the factors as follows:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210, 848 P.2d 1258 (1993)).

While courts have not delineated the complete universe of proceedings to which the public trial right attaches, we employ the experience and logic test to determine whether a proceeding implicates the public trial right. *State v. Sublett*, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012); *id.* at 136 (Stephens, J., concurring). Where experience and logic counsel that a particular proceeding must be open, a trial court's failure to conduct a *Bone-Club* analysis justifying a closure will result in a new trial. *See State v. Paumier*, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012).[3] A violation of the public trial right is structural, meaning prejudice is per se presumed to inhere in the violation. *State v. Wise*, 176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012); *Paumier*, 176 Wn.2d at 35; *Easterling*, 157 Wn.2d at 181; *see also In re Pers. Restraint of Morris*, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012) (recognizing the error is structural on direct appeal). We have also recognized that a public trial claim may be raised for the first time on appeal and does not require an objection at trial to preserve the error. *Wise*, 176 Wn.2d at 15-16; *Paumier*, 176 Wn.2d at 36; *Easterling*, 157 Wn.2d at 173 n.2.

With this brief overview of our public trial jurisprudence, we turn to the questions presented by this case.

---

[3] We use "new trial" as a shorthand reference to the standard for automatic reversal. Where the error involves only the closure of a pretrial proceeding that can be repeated without any effect on the trial, a lesser remedy may be appropriate. *See Waller*, 467 U.S. at 40 (directing new suppression hearing and noting, "A new trial need be held only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial or in some other material change in the positions of the parties."). *But see Bone-Club*, 128 Wn.2d at 262 (granting new trial rather than only new suppression hearing because testimony at public hearing would likely differ and should be available as impeachment evidence).

### RAP 2.5(a) Does Not Preclude Appellate Review when a Defendant Does Not Object to Public Trial Error

Preliminarily, the State asks us to overrule our precedent regarding the application of RAP 2.5(a) to claims of public trial error and hold that Njonge's failure to object in the trial court precludes review of his public trial claim under RAP 2.5(a). We decline the State's invitation to disturb settled law.

Not long ago, in the fall of 2012, this court held in *Wise* that a violation of the public trial right is reviewable for the first time on appeal. 176 Wn.2d at 16-19 & n.11. This was not an isolated holding, as the court traced state cases since *Bone-Club*, as well as federal precedent, and rejected an argument to overrule these cases, emphasizing that "[s]tability in the law and policy reasons demand that we maintain our rule." *Id.* at 18 (citing *Easterling, Brightman,* and *Orange*); *see also Paumier,* 176 Wn.2d at 36-37 (explaining that "RAP 2.5(a) does not apply in its typical manner"). Subsequently, in *State v. Beskurt,* six justices did not address RAP 2.5(a) in analyzing the defendant's public trial claim, despite a three-justice dissent that would have invoked the rule. 176 Wn.2d 441, 445-48, 293 P.3d 1159 (2013) (four justice lead opinion); *id.* at 456-59 (Stephens, J., concurring, joined by Fairhurst, J.); *id.* at 449-50, 456 (Madsen, C.J., dissenting). The State relies on the dissent in *Beskurt* and repeats the argument that the cases that announced the presumption of prejudice for public trial violations—*Bone-Club, Brightman,* and *Orange*—are based on a pre-RAP 2.5(a) case, *State v. Marsh,* 126 Wash. 142, 217 P. 705 (1923). But the reasoning advanced by the *Beskurt* dissent gained no

traction then, and we see no reason to embrace it now. We will overrule precedent only upon a showing that it is both incorrect and harmful. *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). The State cannot make this showing. We continue to hew to our well-reasoned and long-standing precedent and hold that a defendant's failure to contemporaneously object to a public trial violation does not preclude appellate review under RAP 2.5(a). We therefore turn to the merits of Njonge's article I, section 22 claim.

## Njonge Did Not Suffer a Violation of His Public Trial Rights

Njonge appears to raise three distinct public trial questions: whether the hardship excusal portion of voir dire conducted by the judge is a proceeding to which the public trial right attaches, whether Njonge's public trial right was violated when a witness was excluded from observing voir dire, and whether there was a public trial violation when television press was excluded from the courtroom. We find no public trial right violation.

### 1. The record in this case does not establish that observers were excluded from the courtroom during hardship excusals

A defendant asserting violation of his public trial rights must show that a closure occurred. *See State v. Jasper*, 174 Wn.2d 96, 121-24, 271 P.3d 876 (2012). As this court explained in *Jasper*:

> "'[O]n a partial or incomplete record, the appellate court will presume any conceivable state of facts within the scope of the pleadings and not inconsistent with the record which will sustain and support the ruling or decision complained of; but it will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent.'"

*Jasper*, 174 Wn.2d at 123-24 (alteration in original) (quoting *Barker v. Weeks*, 182 Wash. 384, 391, 47 P.2d 1 (1935) (quoting 4 C.J. *Appeal and Error* § 2666, at 736 (1916))).

The State notes that this court has found reversible error arising from a public trial violation "only upon a showing that the trial court actually issued an order closing the courtroom, or where it was clear that people were in fact excluded from the proceedings." Suppl. Br. of Pet'r at 10. The Court of Appeals properly concluded that a court need not *order* a closure to violate the public trial guaranty, but it never addressed the State's latter contention that it must be clear from the record that spectators were in fact excluded from proceedings. *Njonge*, 161 Wn. App. at 575-76. On this record, there is no conclusive showing that spectators were totally excluded from the juror excusals. We cannot presume the existence of facts to which the record is silent. *Jasper*, 174 Wn.2d at 124.

The Court of Appeals read the record here to effect "a full closure of voir dire for the morning session." *Njonge*, 161 Wn. App. at 578-79. A fair reading of the transcript does not lend itself to such certainty. In speaking to the observers about space limitations, the trial court explained that everyone was welcome to watch but that there might not be seats for everyone who wanted to observe. The court said, "Tomorrow when we have the jury selection, there will not be room for *all* of you. . . . The chance of *all* you being able to be here and observe are slim to none during the jury selection process." VRP (June 2, 2009) at 105-06 (emphasis added). The court mentioned that it was looking into the possibility of

accommodating observers by allowing them to stand or sit in the anteroom, if the fire marshal permitted it.

This discussion does not demonstrate that *no* observers were going to be allowed in the courtroom during the first stages of voir dire. Rather, this passage of the record could easily suggest that the court sought to accommodate *additional* observers in the anteroom but was not able to do so. Neither does the later conversation with the prosecutor about allowing people to enter after some jurors were excused demonstrate that no spectators had been present during the hardship excusals. This may be one reasonable inference, but the record can equally be read to mean that additional persons were admitted as space became available.

The only thing that is certain from the record is that there were space limitations in the courtroom. But the size of a courtroom alone cannot effect a closure. *See United States v. Shryock*, 342 F.3d 948, 975 (9th Cir. 2003); *United States v. Kolbi*, 172 F.2d 919, 923 (3d Cir. 1949) (observing that the public trial right does not require holding a trial in a place large enough to accommodate all those who desire to attend). As Justice Harlan once observed:

> Obviously, the public-trial guarantee is not violated if an individual member of the public cannot gain admittance to a courtroom because there are no available seats. The guarantee will already have been met, for the "public" will be present in the form of those persons who did gain admission. . . . A public trial implies only that the court must be open to those who wish to come, sit in the available seats, conduct themselves with decorum, and observe the trial process.

*Estes v. Texas*, 381 U.S. 532, 588-89, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965) (Harlan, J., concurring). On this record, while it cannot be determined

conclusively that observers were in the courtroom during the proceeding in question, neither can it be said that the public was excluded.[4] We have required a better factual record to find a violation of this magnitude. *Bone-Club*, 128 Wn.2d at 256-57 (total physical exclusion of spectators); *Orange*, 152 Wn.2d at 802 (record demonstrated that trial court prohibited all spectators and family members from observing voir dire); *Paumier*, 176 Wn.2d at 32-33 (jurors questioned in chambers outside view of any observers); *Wise*, 176 Wn.2d at 7 (same).

Where no closure is demonstrated, we analyze the case "as a matter of courtroom operations, where the trial court judge possesses broad discretion." *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011); *see State v. Collins*, 50 Wn.2d 740, 745-46, 314 P.2d 660 (1957) (observing that where members of the public were present during trial, the exclusion of additional spectators was within the trial court's discretion to manage the courtroom). Here, the trial court acted well within its discretion to regulate overcrowding in the courtroom. We hold that the record does not show the court closed the courtroom to the public during voir dire. Consequently, Njonge has not established a public trial violation.

---

[4] The Court of Appeals was troubled by the trial court's statement that the first two rows of benches in the courtroom were to remain open. *Njonge*, 161 Wn. App. at 580. But it is not clear from the trial court's statements what it meant by leaving the benches "open." In the context of the discussion, the court seems to have meant the benches had to be open for jurors, meaning they were not available to the public. Nothing in the record demonstrates the benches were left empty.

### 2. *The trial court did not err in excluding the family member witness from voir dire.*

As noted above, one of the victim's family members, who was also going to be called as a witness during trial, wanted to watch voir dire. The trial court disallowed this because of space concerns and also because the court believed allowing a witness to observe voir dire could negatively impact the fairness of the trial.[5]

Assuming Njonge is challenging the exclusion of the witness as a distinct public trial violation, his challenge fails. We have observed that the exclusion of witnesses from trial does not implicate the public trial right, but is instead a matter of trial court discretion rooted in the court's courtroom management prerogative. *Lormor*, 172 Wn.2d at 94-95. We noted in *Lormor* that Evidence Rule (ER) 615 allows a court the discretion to order the exclusion of a witness "'so that they cannot hear the testimony of other witnesses'" on its own motion. *Id.* at 94 (quoting ER 615). In such an instance, a court should articulate reasons for the discretionary decision; because the exclusion of a witness during trial is not a

---

[5] It is not entirely clear whether Njonge is making a separate challenge concerning the exclusion of the family-member witness or simply pointing to the witness as part of the general public that was allegedly denied access by reason of the limited seating. *See* Am. Br. of Appellant at 7 (noting the exclusion of the witness from voir dire as a factual matter in his overall discussion of the purported closure during the hardship excusals). The State did not specifically respond to Njonge's brief discussion of the witness exclusion.

closure implicating the public trial right, the court's explanation need not hew to the *Bone-Club* factors. *See id.* at 94-95.

We similarly resolve the exclusion of the family-member witness here. Although voir dire does not involve testimony, there is nevertheless the potential for a witness to tailor testimony to the things seen, heard, and observed during voir dire or the potential for jurors to form improper impressions of a witness from observations made prior to testimony (the trial court cited the latter concern here). For this reason, the exclusion of a witness from voir dire should be treated as a matter of court discretion and not as a closure implicating the public trial right. We hold that there was no abuse of discretion because the judge provided adequate reasons for excluding the witness: the limited space and the concern that some prejudice would arise from allowing the jury to observe the witness before he or she presented testimony. To the extent Njonge implies that his public trial right was violated by the exclusion of the family-member witness from voir dire proceedings, we reject this claim.

### 3. *The exclusion of a television press crew from voir dire was not a closure violating Njonge's public trial right*

As explained above, the trial court excluded a television camera crew from voir dire, indicating they would be allowed to film once the jury was selected and opening statements began. VRP (June 4, 2009) at 4. We conclude that this exclusion also did not violate Njonge's right to a public trial.

-14-

The right to a public trial includes the right to a public voir dire. *Presley*, 558 U.S. at 213; *Wise*, 176 Wn.2d at 12 n.4; *Brightman*, 155 Wn.2d at 515. Njonge argues that the public includes the press. This is correct, but the cases to which Njonge cites are those in which there was a total exclusion of both general public and all press. *See* Am. Br. of Appellant at 24 (citing *Orange*, 152 Wn.2d at 811; *State v. Erickson*, 146 Wn. App. 200, 206, 189 P.3d 245 (2008)). That is not the fact pattern here. The trial judge's comments about the television crew make it clear that the courtroom was open to the public and that she was disallowing the *filming* of voir dire, not the presence of the media. If there is an issue here, it potentially implicates the First Amendment right of the press to be present at trial, but not article I, section 22. *See* CONST. amend. I; *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 516, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) (Stevens, J., concurring) (explaining that the right of the press to view a trial is a First Amendment right). No party has asserted a First Amendment violation here. Thus, we reject Njonge's claim relating to the exclusion of the television crew.

## CONCLUSION

The record in this case does not establish a violation of Njonge's public trial right. We decline to overrule well-settled precedent holding that a defendant may raise a public trial claim for the first time on appeal and therefore address the merits of Njonge's claim. Njonge has failed to show, however, that the trial court completely closed the courtroom during any portion of voir dire. Further, the trial court acted well within its discretion by excluding a family member of the victim

who would be testifying and by disallowing media to film voir dire. Finding no public trial violation, we reverse the Court of Appeals. We remand this case to that court to consider Njonge's remaining claims of error upon which we did not grant review.

WE CONCUR:

_____

_____

_____
Fairhurst, J.

_____
George McCloud, Jr.

No. 86072-6

WIGGINS, J. (concurring in result)—I concur in the majority's resolution of this case but disagree with the majority's reasoning. As recent cases demonstrate, labeling all public trial errors as structural is harmful and incorrect. *See State v. Smith*, No. 85809-8, slip op. at 8-14 (concurrence in result) (Wash. Sept. 25, 2014). While some egregious closures may fall into the class of errors we deem structural, not all public trial violations are of the same magnitude. If the error is not structural, I would require a defendant to object at trial or to show prejudice, as required by our Rules of Appellate Procedure. *See* RAP 2.5(a)(3).

Here, the errors were not so egregious as to require automatic reversal. Joseph Njonge claims public trial violations because space was limited in the courtroom, a family member of the victim was excluded, and members of the media could not film proceedings. But there is no evidence that any of these errors rendered the trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. *See State v. Momah*, 167 Wn.2d 140, 149, 217 P.3d 321 (2009). In addition, Njonge failed to object to the alleged closures at trial and, on appeal, he has given us no reason to believe that the closures had any practical and identifiable consequences on the trial of his case. Accordingly, I would reverse the Court of Appeals.

I would also reiterate that requiring an objection in most cases has the benefit of developing an adequate record for appeal. *See Smith*, slip op. at 16 (concurrence in result). As to Njonge's first claim, the majority holds that the record is ambiguous as to whether the court excluded members of the public from the courtroom. Majority at 11. The majority reasons that while it is possible that observers were excluded, an equally reasonable inference from the record is that the court sought to accommodate additional observers, was unable to do so initially, and eventually admitted them as space became available. *Id.*

While I agree that the record is inconclusive, a timely objection would have clarified the record by prompting the trial court to state whether or not the courtroom was closed to the public.[1] An objection by a party provides a forceful reminder that a *Bone-Club*[2] analysis and an adequate record are both required. In addition, requiring an objection properly acknowledges that it is the duty of the parties to raise any objection and to establish a record of closure, thereby enabling adequate and full review on appeal.

---

[1] In *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009), this court held that to raise a claim for the first time on appeal, the defendant must supply a record sufficient to determine the merits of the claim. If the record is incomplete, RAP 9.3, 9.4, 9.9, and 9.10 allow the parties to re-create a report of the proceedings necessary for the resolution of claims on appeal. A defendant asserting violation of his public trial rights must show that a closure occurred. *State v. Jasper*, 174 Wn.2d 96, 121-24, 271 P.3d 876 (2012). Here, as in all of the recent public trial cases we have decided, there was no objection and the defendant has not re-created the record to establish closure.

[2] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

2

For these reasons, I concur in result.

Wiggins, J.

Madsen, C.J.

No. 86072-6

GONZÁLEZ, J. (concurring)—I concur. Joseph Njonge had the burden of establishing the error he complained of occurred. He has not met this burden. While I join the majority in recognizing we have already held public trial error can be raised for the first time on review, I concur with Justice Wiggins that our constitution does not make all violations of our open public trial jurisprudence per se reversible error.

González, J.

J. McCloud P.T.