# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

DAIN ANDREW MCGILL,

Appellant.

No. 71217-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 15, 2015

LEACH, J. — Dain McGill appeals his conviction of first degree robbery. He contends that a sidebar conference to address the State's objection during defense closing argument violated his right to a public trial. Following our Supreme Court's decision in State v. Smith,[1] we hold that because the sidebar did not implicate McGill's right to a public trial, no violation occurred. We affirm.

## Background

During closing argument in McGill's jury trial for robbery in the first degree, defense counsel discussed the elements of the charged offense:

> This is an adversarial process, right? [The prosecutor] and I have bumped heads the entire time. We object to each other. We argue. But in an adversarial process, especially a situation like this, it's easiest for you if I tell what I agree with. What do I agree with? I agree that this occurred on June 11th. Do I agree it occurred in Edmonds, Washington? Yes. Snohomish County has jurisdiction. Do I agree that Ms. Stewart was robbed on that day? I do.

The prosecutor objected: "Judge, I'm sorry, I believe this is approaching the personal comment, person belief is going on. Maybe I should state that

---

[1] 181 Wn.2d 508, 521, 334 P.3d 1049 (2014).

outside the jury." The court told counsel, "Why don't you approach," and conducted an off-the-record sidebar discussion with counsel. After the sidebar, the court did not put its ruling or the substance of the conference on the record, saying only, "All right. We're ready." Defense counsel then continued closing argument. The State made no further objection.

A jury convicted McGill as charged. McGill appeals.

## Analysis

McGill contends that the trial court violated his right to a public trial by conducting a "closed" sidebar conference to consider the State's objection to defense counsel's closing argument. An alleged violation of the right to a public trial presents a question of law this court reviews de novo.[2] The Washington and United States Constitutions guarantee the right of a criminal defendant to a public trial.[3] Article I, section 10 of the Washington Constitution contains an additional guaranty of open court proceedings: "Justice in all cases shall be administered openly, and without unnecessary delay." There is a strong presumption that courts are to be open at all stages of trial.[4]

---

[2] State v. Sublett, 176 Wn.2d 58, 70, 292 P.3d 715 (2012).

[3] U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."); WASH. CONST. art. I, § 22 ("In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, [and] to have a speedy public trial by an impartial jury.").

[4] Sublett, 176 Wn.2d at 70.

A party who proposes closure of a proceeding must show "an overriding interest based on findings that closure is essential to preserve higher values and narrowly tailored to serve that interest."[5] In State v. Bone-Club,[6] the Washington Supreme Court set forth a five-factor test courts must use to evaluate the constitutionality of a proposed closure. Our Supreme Court has held that a public trial claim may be raised for the first time on appeal[7] and that a violation is generally a structural error requiring reversal.[8]

"But not every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public."[9]

---

[5] State v. Momah, 167 Wn.2d 140, 148, 217 P.3d 321 (2009); see also Waller v. Georgia, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

[6] 128 Wn.2d 254, 906 P.2d 325 (1995). In Bone-Club, the court held that a court must consider the following factors on the record:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

128 Wn.2d at 258-59 (alteration in original) (quoting Allied Daily Newspapers v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

[7] State v. Njonge, 181 Wn.2d 546, 554, 334 P.3d 1068, cert. denied, 135 S. Ct. 880 (2014); State v. Wise, 176 Wn.2d 1, 15-16, 288 P.3d 1113 (2012).

[8] Njonge, 181 Wn.2d at 554; Wise, 176 Wn.2d at 13-14; State v. Paumier, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012).

[9] Sublett, 176 Wn.2d at 71.

Before deciding if a trial court violated a defendant's right to a public trial, a reviewing court must determine if "the proceeding at issue implicates the public trial right, thereby constituting a closure at all."[10] In State v. Sublett,[11] the court adopted the "experience and logic" test articulated by the United States Supreme Court in Press-Enterprise Co. v. Superior Court[12] to determine if a particular process must remain open to the public absent a Bone-Club analysis. The "experience" prong of this test asks "'whether the place and process have historically been open to the press and general public.'"[13] "The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'"[14] If the answer to both questions is yes, the public trial right attaches, and the trial court must apply the Bone-Club factors on the record before closing the proceeding to the public.[15]

In Smith, the court adopted a further three-step inquiry to analyze public trial right claims. Applying the threshold experience and logic test, a court first determines if the proceeding implicates the public trial right.[16] Second, the court asks whether a closure occurred.[17] Third, the court examines whether the

---

[10] Sublett, 176 Wn.2d at 71; see also State v. Beskurt, 176 Wn.2d 441, 446, 293 P.3d 1159 (2013).

[11] 176 Wn.2d 58, 72-75, 292 P.3d 715 (2012).

[12] 478 U.S. 1, 8-13, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (Press II).

[13] Sublett, 176 Wn.2d at 73 (quoting Press II, 478 U.S. at 8).

[14] Sublett, 176 Wn.2d at 73 (quoting Press II, 478 U.S. at 8).

[15] Sublett, 176 Wn.2d at 73.

[16] Smith, 181 Wn.2d at 513.

[17] Smith, 181 Wn.2d at 513.

closure was justified.[18] If the court concludes after applying the experience and logic test that the right to a public trial does not apply to the proceeding at issue, it need not reach the second and third steps in the analysis.[19]

Applying the experience and logic test in Smith, the court held that traditional sidebars do not implicate the right to a public trial.[20] Addressing the experience element, the court noted that sidebar conferences "have historically occurred outside the view of the public."[21] On the logic prong, the court found "no specific interest that is served by ensuring that the public is privy to a sidebar."[22] Rather, the court found more persuasive reasons in favor of deciding that the public trial right does not attach. The court noted, for example, the practical considerations involved in interrupting trial to dismiss the jury every time the court wishes to admonish or hear an objection from counsel. The court concluded that "evidentiary rulings that are the subject of traditional sidebars do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness."[23]

Here, the sidebar involved a single speaking objection by the State to defense closing argument. Judging from the fact that the clerk made no note of the interruption in the trial minutes, the discussion appears to have been brief.

---

[18] Smith, 181 Wn.2d at 513.
[19] Smith, 181 Wn.2d at 519.
[20] Smith, 181 Wn.2d at 511.
[21] Smith, 181 Wn.2d at 515.
[22] Smith, 181 Wn.2d at 518.
[23] Smith, 181 Wn.2d at 518 (citing Sublett, 176 Wn.2d at 77).

Following the sidebar, defense counsel continued in a similar vein: "I agree with most—my client agrees with most of the to convict instruction, which is Instruction No. 7. The issue is how this actually occurred." We infer from the rest of counsel's argument, to which the State did not object, that the trial court overruled the State's objection.

In a footnote in Smith, our Supreme Court emphasized, "To avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record."[24] The court observed later, "Critically, the sidebars here were contemporaneously memorialized and recorded, thus negating any concern about secrecy."[25]

In McGill's trial, the purpose of the sidebar was to address an objection, a traditional subject area. And the context indicates that the trial court conducted it to avoid disrupting the flow of trial. But unlike the numerous hallway conferences in Smith, the sidebar conference here was not recorded or otherwise memorialized. We conclude nonetheless that Smith controls here.

The record here raises none of the "concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness."[26] Our Supreme Court has stated the "guiding principle" of a public trial analysis as

---

[24] Smith, 181 Wn.2d at 516 n.10.
[25] Smith, 181 Wn.2d at 518.
[26] Smith, 181 Wn.2d at 518 (citing Sublett, 176 Wn.2d at 77).

"'whether openness will enhance[ ] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'"[27] Describing sidebars, the court concluded, "Nothing positive is added by allowing the public to intrude on the huddle at the bench in real time," and "[n]o logic compels the conclusion that sidebars must be conducted in open court."[28] Although the trial court here did not memorialize the substance of the sidebar, the record shows that the sidebar was consistent with the "guiding principle" our Supreme Court articulated. The sidebar and the trial court's ruling off the record did not thwart the defense's strategy or the public's right of access. Nor did they jeopardize the basic fairness of McGill's criminal trial or the appearance of fairness essential to public confidence in the system. This record reveals no reason for us to depart from the holding of Smith that "reasonable and traditional sidebars used to avoid interruption of a trial do not implicate the public trial right."[29] Therefore, we do not reach the second and third steps of the Smith analysis. We hold that the sidebar discussion did not violate McGill's right to a public trial.

---

[27] Smith, 181 Wn.2d at 514-15 (alteration in original) (internal quotation marks omitted) (quoting Sublett, 176 Wn.2d at 75).

[28] Smith, 181 Wn.2d at 518-19.

[29] Smith, 181 Wn.2d at 521.

Conclusion

Because the single sidebar discussion during closing argument did not implicate McGill's right to a public trial, no violation of that right occurred. We affirm.

_Leach, J._

WE CONCUR:

_Appelwick, J._          _Becker, J._