IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

DAVID KELLY DEAN,

Appellant.

No. 82366-3-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — David Dean was convicted of child molestation in the first degree and indecent exposure for sexually touching and exposing himself to a child at a bus stop. Dean challenges the trial court's denial of his motion for continuance due to the COVID-19 pandemic, claiming that he was denied his rights to competent counsel, a representative jury, and a public trial. Dean also challenges a juror for actual bias. We affirm.

FACTS

In the evening of August 16, 2018, nine-year-old O.S.[1] was outside riding a hoverboard near his home. David Dean was standing at a bus stop when he called O.S. over to him and they discussed O.S.'s hoverboard. O.S. and Dean became distracted by an incident unfolding nearby, where police officers were

_____

[1] The child victim is referred to by multiple names in the record, but for simplicity, we refer to the child by first and last initial of the legal name.

Citations and pin cites are based on the Westlaw online version of the cited material.

surrounding a bus. Dean, standing behind O.S., squeezed O.S.'s bottom, pressed and rubbed his erect penis against O.S.'s bottom, and then reached around and touched O.S.'s genitalia over O.S.'s clothes. O.S. asked Dean to stop, and Dean said he would, but asked O.S. to stay. As O.S. began to leave, Dean took out and held his penis and asked if O.S. wanted to see it. After returning back home, O.S. told the mother what had happened. O.S.'s mother notified police, and Dean was apprehended shortly thereafter.

Dean was charged with one count of child molestation in the first degree and one count of indecent exposure, which included an aggravating circumstance that the indecent exposure was committed for the purpose of sexual gratification. Dean was found incompetent to stand trial and ordered to undergo restoration. Dean was later found fit to stand trial.

Shortly before his two-day trial, in the fall of 2020, Dean and his attorney brought a motion to continue his trial for "COVID-related concerns." At the hearing, Dean's defense counsel represented to the court that they were prepared to go to trial but had concerns about doing so. Dean's counsel stated:

> I don't believe that Mr. Dean can receive a fair trial given the current circumstances. And I don't believe that I would be adequately representing him in the current circumstances if we were to go to trial right now.

Specifically, defense counsel noted his health concerns for both himself and Dean. Counsel stated that Dean, who was 63 years old at the time of trial, was of "advanced age" and was unsafe in circumstances where he was exposed to the

2

virus. Counsel stated that he himself had asthma and while he was "not high enough risk to get a doctor's note" his "ability to give a hundred percent" of his attention was hindered due to his anxiety about COVID-19.[2] Last, counsel represented that he was concerned about a fair jury pool, given that individuals over age 60 were permitted to be excused from duty.

The State objected to the continuance, given the case was two years old and the victim and family were waiting for a resolution, it was unclear when the pandemic would abate. The State also noted that other felony sex offense trials had already moved forward. Responding to defense counsel's jury pool concerns, the State conceded that older individuals were more likely to be excluded but that the use of Zoom had increased jury diversity and there was no impact on Dean's ability to have a jury of his peers.

The court agreed with the State and denied Dean's motion to continue, ruling that "because of the age of the case that this case does need to go forward[.]" The court stated that it did not see any imminent change to the pandemic circumstances and that a fair jury could be impaneled. The court also told defense counsel to raise any possible mitigation measures he could think of to lessen his concerns.

Jury selection was conducted over Zoom. Several prospective jurors were

---

[2] Dean also stated he had difficulty hearing and strained to hear people talking through masks, and his attorney also was concerned about how wearing a mask prevented him from fully using his "toolbox as it were." Dean does not raise these issues on appeal.

excused due to COVID-related health concerns.  Some prospective jurors cited their age as the basis for their health concerns and were excused.

Many jurors were excused for cause because they stated they could not remain impartial or follow the presumption of innocence.  Juror 16 indicated on his jury questionnaire that he could not be fair and impartial in a sexual abuse case:

> Question 43: Are you aware any recent events, new stories, or reports that may cause you to favor one side or the other in a sexual abuse case?
>
> Answer: Yes
>
> Question 44: Is there any reason that you would be unable to be fair and impartial to both sides in a case involving an accusation of sexual abuse?
>
> Answer: Yes
>
> Question 45: If yes, please explain:
>
> Answer: I absolutely detest sex that is not consensual.
>
> Question 46: Do you have any concerns for any reason about your ability to be a fair and impartial juror in this case?
>
> Answer: Yes

When questioned by the prosecutor during voir dire, Juror 16 stated "I don't like people who touch kids.  That's all I got to say."  The prosecutor followed:

> [PROSECUTOR]: Okay. So let's talk about – since you brought it up, your concern about the subject matter of this case.  You understand that Mr. Dean is presumed innocent.  As [the judge]

4

indicated that presumption carries throughout this entire case. That it's my job, it's my burden to prove this case. And so it's your – it would be your responsibility as a juror to listen to that evidence and to make the decision whether or not I've proven the case beyond a reasonable doubt. Do you think – because of the nature of this kind of case, could you hold me to that burden?

JUROR 16: As in like if you gave me sufficient evidence –

[PROSECUTOR]: Exactly.

JUROR 16: – could I make like – yeah, sure. Yep.

[PROSECUTOR]: What about that presumption of innocence; do you think you could continue to maintain that presumption that Mr. Dean is innocent until you've heard all the evidence and you go back there to deliberate? Do you think you could do that?

JUROR 16: I mean, I don't know anything about the case or I don't know – okay, yeah, let's presume he's innocent until guilty.

[PROSECUTOR]: Okay.

JUROR 16: Until proved to be guilty.

[PROSECUTOR]: Okay, thank you.

Juror 16 later disclosed to the prosecutor that his sister had an ex-boyfriend that was "really touchy with her" despite the fact that she did not like it. Juror 16 explained that he did not like seeing that "unconsensual" contact. The prosecutor asked Juror 16 whether he could set the issue with his sister aside and listen to the evidence or if those memories and emotions would "be playing in your mind as you hear this evidence?" Juror 16 stated, "They're two separate completely incidents."

5

Juror 16 also told defense counsel that he believed a child would not "normally" make up an allegation "unless they were severely disturbed." Defense counsel continued:

> Does that – does the fact you believe a child would never normally lie about something like this, would that make it difficult or even impossible for you to start the trial with the presumption that in fact that's exactly what happened and that Mr. Dean is innocent of this allegation?
>
> JUROR 16: Not necessarily because I have kids that age too and children do – they are capable of lying but I do believe that normally they would not. I would need more evidence to make a more just decision.

Defense counsel continued to question Juror 16 about whether he could presume that Dean was innocent at the beginning of trial or whether he would assume the child was telling the truth.

> [DEFENSE COUNSEL]: Mr. Dean has been accused of a crime and Mr. Dean has the right to be presumed innocent by the people that come in to judge him. Which means when they come in they are presuming that he's not guilty as they walk in the door, before they hear the evidence. Can you do that given your beliefs about these kinds of accusations?
>
> JUROR 16: Yes. Because I do not know him. . . . I could presume he is innocent because I do not know him.

Defense counsel continued to probe Juror 16:

> Do you think it would be difficult, if you're sitting as a juror in this case, to walk in on the first day with the presumption as instructed by the judge that Mr. Dean is innocent?

6

JUROR 16: It wouldn't be difficult because like I will never judge someone unless I physically talk to them, shook their hand or like seen them.  You know, I just don't make, you know, irrational judgments just by seeing a person or like hearing about them.  I like to meet the person.  If that answers your question.

[DEFENSE COUNSEL]: It does.  Let me follow up because I want to delve in on that.  Because what I'm asking for is not a blank slate for Mr. Dean as you would have with, as you report, any stranger.  Mr. Dean has a right to be presumed innocent by all the people that are going to sit in judgment of him.  And so given that, would you be able to start not from a neutral position but from a position that walking in you got to presume that he didn't do this?

JUROR 16: I can.

[DEFENSE COUNSEL]: You can, okay.  Work with me a little bit. Tell me how you get there from your other position.

JUROR 16: My – my thinking is that like – like it's not necessarily that I feel he's a blank slate because in my mind like everyone is human, everyone is capable of good and bad.  (Unintelligible) that rational choice. And how I know that another human is a rational person is that I talk to them and that is – does that answer your question?

[DEFENSE COUNSEL]: It does.  Would it be possible for you to sit in judgment of someone that you never get the benefit of talking to?

. . .

JUROR 16: How would I judge them if I don't get a chance to talk to them?

[DEFENSE COUNSEL]: Right. For example we've heard that Mr. Dean has the right to remain silent as well, that he has no burden to offer any story.  So would you be able to follow that instruction as well, presume him innocent even without talking to him, even without hearing from him?

7

JUROR 16: Well, if there was – given if there was like overwhelming evidence that he was guilty or if there was overwhelming evidence or lack of evidence that he is innocent, I would make my judgment depending on the decisions – or not the decisions – depending on the evidence.

After a lengthy questioning of Juror 16, defense did not seek to excuse him. The defense accepted the jury and did not use any of its peremptory challenges. Juror 16 was eventually impaneled on the jury.

The jury found Dean guilty of child molestation in the first degree and indecent exposure. By special verdict, the jury found that Dean committed the crime of indecent exposure with sexual motivation. The trial court sentenced Dean to an indeterminate sentence of 60 months to life.

Dean appeals.

## DISCUSSION

### Dean's Request for Continuance

The trial court has the discretion to grant or deny a motion for a trial continuance. State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). When considering a motion for continuance, a trial court might consider such factors such as due process and "maintenance of orderly procedure." Id. at 273. But a court must also consider "any detriment to a child victim that might be caused by a continuance with the compelling reasons for continuing the trial." Id.

We review a decision to deny a continuance motion for an abuse of discretion. Id. at 272. We will not overturn a denial for continuance unless a

8

petitioner can demonstrate that the trial court's discretion was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Id. at 272 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

A. The Pandemic

Dean argues that the trial court abused its discretion when it denied his motion to continue because the dangers of the pandemic necessitated trial delays. We disagree.

In February 2020, Governor Jay Inslee declared a state of emergency in Washington State due to the outbreak of the COVID-19 virus.[3]

The Washington State Supreme Court's March 20, 2020 order suspended criminal jury trials until after April 24, 2020, noting that "[a] continuance of these criminal hearings and trials is required in the administration of justice."[4] The order permitted trials "already in session" to be continued if a defendant agreed to the continuance. The order further permitted courts to exclude the time

---

[3] Proclamation of Governor Jay Inslee, No. 20-25 (Wash. Mar. 23, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-50%20-%20COVID-19%20Reducing%20Prison%20Population.pdf [https://perma.cc/PJ48-WAEY].

[4] Amended Order, No. 25700-B-607, In re Response by Washington State Courts to the COVID-19 Public Health Emergency in Washington State (Wash. Mar. 20, 2020), Supreme Court Emergency Order re CV19 031820.pdf (wa.gov) [https://perma.cc/MF47-TY8W].

between the March 20, 2020 order and the new trial date when calculating the time for trial. The State Supreme Court in its May 29, 2020 order extended the suspension on criminal jury trials until July 6, 2020 and included the same March 2020 provisions as noted above.[5]

The suspension of criminal trials had been lifted several weeks before Dean motioned the court for a continuance on September 10, 2020. The Supreme Court's June 18, 2020 order noted that "[j]ury trials are necessary to the open administration of justice in Washington and jury trials would begin again on July 6 while observing "public health guidance."[6] The June 18, 2020 order further provided that "Courts are encouraged to move toward conducting as much court business as can be done consistent with public health and safety, in the interest of the fair and timely administration of justice."

B. Supreme Court Orders

Dean argues that the trial court did not adhere to Supreme Court orders when it denied Dean's request to reschedule his trial due to the COVID-19 pandemic. We disagree.

Dean states that the Supreme Court's September 10, 2020 order[7]

---

[5]Amended Third Revised and Extended Order, No. 25700-B-626, In re Response by Washington State Courts to the COVID-19 Public Health Emergency in Washington State (Wash. May 29, 2020), AMENDED Third Extended and Revised SCT Order 052920.pdf (wa.gov) [https://perma.cc/MF47-TY8W].

[6] Order, No. 25700-B-631, In re Response by Washington State Courts to the Public Health Emergency (Wash. June 18, 2020), Jury Resumption Order 061820.pdf (wa.gov).

[7] The September 10, 2020 order was filed the same day as Dean motioned the

required the continuation of jury trials due to the pandemic.[8]  He is incorrect.  The

September 10, 2020 order does not include such a provision.  The September

10, 2020 order merely permitted the time between May 20, 2020 and the next

scheduled hearing after October 15, 2020 be excluded when calculating the time

for a speedy trial.[9]  It also allowed courts to waive a defendant's presence in

some instances.

Dean maintains that the Supreme Court orders "permitted the extension of

time for trial if the defendant agrees."[10]  Dean mischaracterizes the orders.  In the

March, May, and June orders, the Supreme Court stated that trials already in

session where a jury had been sworn in could be continued if the defendant

agreed to a continuance.  The June 18, 2020 order specified that the provisions

applied to trials already in session prior to July 6, 2020, that is, trials operating

during the suspension period.  Dean's trial was not in session until after the

Supreme Court's suspension had been lifted.  Dean fails to cite to anything in the

Supreme Court orders that entitled him to an automatic trial continuance at his

court for a continuance.
       [8] Dean also refers to the Supreme Court's October 13, 2020 order, but as this
order was filed after Dean's trial ended on October 1, 2020, we do not consider Dean's
arguments related to that order.
       [9]  Order, No. 25700-B-642, In re Response by Washington State Courts to the
Covid-19 Public Health Emergency (Wash. Sept. 10, 2020), Excluded Period Extension
Etc Order.pdf (wa.gov).
       [10] Again, Dean cites specifically to the October 13, 2020 order which was
implemented after his trial ended.

request.

The trial court did not violate the emergency orders from the Washington State Supreme Court by denying Dean's request for a continuance.

*C. Health Concerns*

Dean next contends that "serious health concerns" for himself and his attorney requires reversal. The "serious health concerns" Dean raised at trial related to "risk of serious health consequences from COVID-19" because of defense counsel's asthma and Dean's "advanced age."[11] Counsel explained to the court that he has asthma and "[w]hile I'm not high enough risk to get a doctor's note, as it were, I think it's fair to say that my ability to give a hundred percent of my attention is compromised right now because I'm very concerned about where everyone's mask is, where everyone's breathing."

Dean does not allege or cite to anything in the record suggesting that the trial court conducted the trial inconsistent with public health guidance.[12] Nor does Dean allege that defense counsel was ineffective because he conducted trial while being anxious because of the pandemic.

Dean requested a six-week continuance, though conceding that there was

---

[11] At the time of Dean's trial, the Centers for Disease Control and Prevention (CDC) cautioned that individuals over the age of 65 were at a higher risk for severe illness from COVID-19.

[12] The record indicates the court conducted jury selection in a virtual courtroom, which allowed potential jurors to appear for voir dire remotely. Masks were required in the courtroom, with provided hand sanitizer, and required social distancing.

no indication the pandemic circumstances would be different in that time frame.

The State objected to the continuance, citing the age of the case and that the child victim was waiting for resolution. The State pointed out that there was no end to the pandemic in sight and the community was unlikely to return to normalcy soon.

The trial court, after considering the child victim's interest in getting the case resolved, the age of the case, the unlikeliness of an imminent change in circumstances caused by the pandemic, the health concerns, and the court's ability to mitigate some of those concerns, denied the motion.

The trial court did not abuse its discretion in denying Dean's motion for a continuance based on general health concerns of Dean and defense counsel.

Representative Jury

Dean contends that he was denied his right to a fair trial by a representative jury of his peers because "potential jurors who were 60 years old or older, or who lived with someone that age, were automatically excluded because they were deemed 'high risk' for COVID-related serious health problems." We disagree.

"The absence of any particular group of people on a jury does not violate a defendant's right to a jury of his peers, unless there are circumstances indicating purposeful discriminatory exclusion." State v. Barron, 139 Wn. App. 266, 280, 160 P.3d 1077 (2007) (citing State v. Ashcraft, 71 Wn. App. 444, 459-60, 859

13

P.2d 60 (1993)).  A criminal defendant is entitled to a "jury drawn from a fair

cross section of the community."  In re Yates, 177 Wn.2d 1, 19, 296 P.3d 872

(2013) (quoting Taylor v. Louisiana, 419 U.S. 522, 534, 95 S. Ct. 692, 42 L. Ed.

2d 690 (1975)).  However, the State may provide "reasonable exemptions so

long as it may be fairly said that the jury lists or panels are representative of the

community."  Id. at 19 (quoting Taylor, 419 U.S. at 538).  It is the challenger's

burden to meet a three-factor prima facie showing that the State violated a fair

cross-section requirement:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Id. (quoting Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579

(1979)).  Once an appellant has made a prima facie showing, the State must

demonstrate a "significant state interest."  Id.

Dean does not attempt to establish a prima facie case under the Duren

test.  And his allegation that potential jurors 60 years or older were automatically

excluded is unsupported by the record.

The Supreme Court's June 2020 order stated that:

> Any process for summoning potential jurors must include the ability to defer jury service by those who are at higher risk from COVID-19 based on their age or existing health conditions, or those of a household member.  However, no identified group may be per se excused from jury

14

service on this basis.

The juror questionnaire explained to jurors that people 65 years old or older "might be at higher risk for severe illness from COVID-19" according to the CDC. The questionnaire asked jurors to state what makes them high risk and whether they could not wear a mandatory facial covering while inside the courthouse. The survey also asked jurors if serving would create a substantial hardship and why.

Prior to the beginning of voir dire, the parties agreed to excuse 18 jurors for hardship that included financial and COVID-specific health reasons. Despite the parties' agreement, the trial court went through each juror individually before ruling whether the juror would be dismissed. While some of those excused cited their age along with health-related issues, not all jurors 60 or older were excused on this basis. One juror identified as being 62 and a half years old and was not automatically excluded by the court or excused by agreement of the parties.[13]

Dean's right to a fair trial with a representative jury was not violated.

<u>Public Trial</u>

To the extent Dean makes an argument that he was denied his right to a trial open to the public, we disagree.[14]

A defendant is entitled to a public trial as guaranteed by article I, section

---

[13] The State exercised a peremptory challenge to excuse this particular juror.

[14] The State contends that review of this claim is unwarranted because Dean did not make a public trial argument below and does not establish a manifest constitutional error. But the Supreme Court has held that "a defendant's failure to contemporaneously

22 of the Washington State Constitution and the Sixth Amendment to the federal constitution. State v. Njonge, 181 Wn.2d 546, 553, 334 P.3d 1068 (2014). An appellant asserting a violation of his public trial rights must demonstrate that a court closure occurred. Id. at 556. We will not presume spectators were excluded from the courtroom if the record is silent. Id.

Dean provides no evidence that the trial was closed to observers; he only states that the pandemic "meant the public had a limited ability to attend the proceedings." The fact that individuals may not wish to observe in-person public court proceedings during a pandemic does not implicate a defendant's right to a public trial.

Dean fails to establish that the court violated his public trial rights.

### Impartial Jury

Dean contends that the trial court erred in failing to sua sponte dismiss Juror 16, despite the fact that Dean did not challenge this juror for cause or exercise an available peremptory challenge. We disagree.

The Sixth Amendment of the U.S. Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to an impartial jury. State v. Guevara Diaz, 11 Wn. App. 2d 843, 854-55, 456 P.3d 869 (2020). This right is violated by the seating of a biased juror, "whether the bias is actual or implied." Yates, 177 Wn.2d at 30. Even where no party moves to challenge a

---

object to a public trial violation does not preclude appellate review under RAP 2.5(a)." State v. Njonge, 181 Wn.2d 546, 555, 334 P.3d 1068 (2014).

juror, a trial court is obligated to dismiss a biased juror sua sponte. Guevara

Diaz, 11 Wn. App. 2d at 855. As the inclusion of a biased juror is not harmless, a

defendant is entitled to a new trial without a showing of prejudice and an

appellant may raise a juror bias claim for the first time on appeal. Id. at 851-52.

Though a trial court must dismiss a biased juror sua sponte, we have also

held that "a trial court should exercise caution before injecting itself into the jury

selection process" so as not to potentially interfere with a defense counsel's trial

strategy. State v. Lawler, 194 Wn. App. 275, 284-85, 374 P.3d 278 (2016).

Given counsel's "experience, intuition, strategy, and discretion," they may have

"legitimate, tactical reasons not to challenge a juror who may have given

responses that suggest some bias." Id. at 285. Before interfering with a

competent defense counsel's decision not to remove a juror, a trial court should

evaluate whether counsel is exercising such a strategy. State v. Phillips, 6 Wn.

App. 2d 651, 667, 431 P.3d 1056 (2018). In Phillips, we held that a court did not

abuse its discretion by not acting sua sponte to remove a juror where defense

counsel "actively questioned" the potentially biased juror about whether they

could follow instructions and rely on the evidence, suggesting that defense

counsel "observed something during voir dire that led counsel to believe [the

juror] could be fair." Id. at 668. We also noted in Phillips that it was significant

that defense counsel removed other jurors during voir dire but did not use all of

their available peremptory challenges, suggesting that counsel "either wanted

[the juror] or did not want [the other] potential jurors on the panel." Id.

We presume each sworn-in juror is impartial and a party must show more than simply a "possibility of prejudice." Our inquiry is whether a juror who has preconceived ideas can set them aside. State v. Munzanreder, 199 Wn. App. 162, 176, 398 P.3d 1160 (2017) (quoting State v. Noltie, 116 Wn.2d 831, 839, 809 P.2d 190 (1991)). Because the trial court is best positioned to assess a juror's ability to be fair and impartial, we review a trial court's decision not to dismiss a juror for manifest abuse of discretion. Guevara Diaz, 11 Wn. App. 2d at 856.

Dean argues that Juror 16's statements—that he was concerned about being impartial in a sexual abuse case, that he "detest[ed]" non-consensual sex, that he did not "like people who touch kids," and that he believed children would not normally lie about sexual abuse—were evidence of the juror's actual bias and inability to serve as an impartial juror. Dean suggests that because Juror 16's statements were never retracted, and "[n]o one asked him about his strongly worded questionnaire response and his other remarks," it was an error for the trial court to allow Juror 16 to sit on the jury.

Dean compares his case to Guevara Diaz. In Guevara Diaz, Juror 23 stated in her questionnaire that she could not "be fair to both sides in a case involving allegations of sexual assault or sexual abuse." Guevara Diaz, 11 Wn. App. 2d. at 858. Neither defense counsel nor the court questioned Juror 23

individually. Id. at 857. The prosecutor asked Juror 23 if she could follow the judge's instruction in reviewing the evidence even if she did not want someone to be punished, for which she answered that she "would be able to." Id. The record also did not establish that Juror 23 responded to any of the group-directed questions. Id. at 858. On appeal, this court concluded that Juror 23 exhibited actual bias because "the record clearly showe[d]" that Juror 23 said she could not be fair. Id.

Unlike Juror 23 in Guevara Diaz, Juror 16 in the instant case was extensively questioned about his responses by both the prosecutor and defense counsel.

When Juror 16 brought up that he did not like "people who touch kids" the prosecutor asked him directly if he could "listen to the evidence" and hold the prosecutor to the burden of proving a case beyond a reasonable doubt. Juror 16 agreed. He also agreed that he could "presume [Dean was] innocent . . . [u]ntil proved to be guilty." Juror 16 stated he could set aside the issue with his sister's ex-boyfriend and listen to the evidence because Dean's case was a completely separate incident. When the prosecutor pushed Juror 16 on his belief that a child would not normally create an allegation of sex abuse, he clarified that he had children and knew they could lie, but that he believed normally they would not and he would "need more evidence to make a more just decision."

Defense counsel again questioned Juror 16 about his ability to presume

19

Dean was innocent.  Juror 16 explained that he would make his decision about Dean's innocence or guilt "depending on the evidence."

Dean points to the fact that no one directly asked Juror 16 about his questionnaire answer stating that he could not be fair and impartial.  However, it is apparent from the questionnaire and conversation with Juror 16, that the basis for his answer was discussed.  Juror 16's questionnaire read:

> Question 44: Is there any reason that you would be unable to be fair and impartial to both sides in a case involving an accusation of sexual abuse?
>
> Answer: Yes
>
> Question 45: If yes, please explain: Answer: I absolutely detest sex that is not consensual.
>
> Question 46: Do you have any concerns for any reason about your ability to be a fair and impartial juror in this case?
>
> Answer: Yes

During voir dire, the prosecutor asked Juror 16 if there was anything in his own experience or the experience of a loved one that would make it difficult for him to hear allegations of a felony sex offense.  That is when Juror 16 explained that he has seen his sister's boyfriend get touchy with her when she did not like it.  Juror 16 explained, "And like me seeing that, I just don't like that.  I don't like, you know, unconsensual contact."  Both the prosecutor and defense counsel individually questioned Juror 16 extensively.  Both the prosecutor and defense counsel educated Juror 16 that the state carried the burden to prove guilt beyond

20

a reasonable doubt and that Dean was to be presumed innocent now and throughout trial. Juror 16 affirmatively stated he could presume Dean innocent and that he would base his decision on the evidence. He also confirmed that his sister's experience was completely different than the case before him.

"[T]he trial court is in the best position to determine a juror's ability to be fair and impartial. It is the trial court that can observe the demeanor of the juror and evaluate and interpret the responses." Noltie, 116 Wn. 2d at 839. The trial court had the opportunity to observe the demeanor of Juror 16 as he was questioned extensively by the prosecutor and defense counsel about his bias and willingness to follow the court's instructions and listen to the evidence. The court also was aware that defense elected not to use an available peremptory challenge to remove him.

Based on this record, the trial court did not manifestly abuse its discretion by not sua sponte dismissing Juror 16.

We affirm.

_____
Coburn, J.

WE CONCUR:

_____
Chung, J.

_____
Verellen, J.

21