

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 2 0 2015
CHIEF JUSTICE

This opinion was filed for record
at 8:00am on Aug. 20, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 85996-5 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| FREDERICK DAVID RUSSELL, | ) | |
| | ) | |
| Petitioner. | ) | Filed: AUG 2 0 2015 |
| | ) | |

YU, J.— This case involves the question of whether reviewing jury questionnaires for hardship implicates the public trial right. On each of the first two days of jury selection in this case, the trial judge, the attorneys, and petitioner Frederick David Russell held work sessions to review juror questionnaires and to separate the hardship juror requests from the others. These work sessions occurred in the jury room, rather than in the courtroom, and the trial court did not conduct a *Bone-Club*[1] analysis on the record before holding the work sessions.

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

Russell contends that the work sessions violated the public trial right guaranteed by article I, sections 10 and 22 of our state constitution and that his convictions should therefore be reversed. The Court of Appeals rejected that contention, as do we. The public trial right was not implicated, and we affirm the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY

On June 4, 2001, Russell had been drinking alcohol and, at about 10:35 p.m., was driving well above the speed limit, straddling both sides of a two-lane highway in a no-passing zone. Russell sideswiped a green Geo that was traveling in the opposite direction, then crashed head-on into a Cadillac that was behind the green Geo. The crash instantly killed the Cadillac's driver and two passengers and severely injured three other passengers, leaving them with permanent disabilities. Russell's car then hit a red Geo that was behind the Cadillac. Russell, his passenger, and the red Geo's driver were able to get out of their cars before both cars caught fire.

Russell was arrested the morning after the accident. He posted bail but did not return for a pretrial hearing in October 2001. Russell was eventually captured in Ireland in 2005. In 2006, he was extradited back to the United States. Due to extensive pretrial publicity throughout eastern Washington, the trial court granted Russell's motion to change venue. Whitman County's only superior court judge

traveled across the state to Cowlitz County to preside over the guilt phase of the trial, which was estimated to take three to four weeks. 9 Tr. of Proceedings (TrP) (Oct. 15, 2007) at 1304-05, 1312.

Before trial, Russell requested "the use of a written juror questionnaire, comprised of questions presented by both parties, to be filled out by all prospective jurors before oral questioning is to commence by the Court or the parties." Clerk's Papers at 1105. Consistent with this request, when prospective jurors arrived for jury duty, they were asked to fill out a questionnaire before being called into the courtroom.[2] The questionnaire was duplicated for review by the judge and counsel. 9 TrP at 1294.

While waiting for the juror questionnaires to be completed and copied, the court went through some preliminary matters on the record in open court. The jury was not present, *id.*, and it is not apparent from the record whether any members of the media or the public were in the courtroom. The judge announced that he, the attorneys, and Russell had held an in-chambers conference, *id.*, where they had agreed to have a work session "in the jury room going through those [questionnaires] and trying to week [sic] out those that will automatically be excused for hardship purposes," *id.* at 1297.[3] The court clerk then brought two

---

[2]No juror questionnaires—either blank or completed—are in the record before this court.
[3]The judge also addressed issues including the State's motion to amend the information, Russell's not-guilty pleas, and anticipated juror seating arrangements. 9 TrP at 1294-1300.

prospective jurors to the court's attention—one who was disqualified, possibly due to illness (although it is not entirely clear from the record), and another who had brought her child with her—and the judge excused both jurors in open court without objection. *Id.* at 1301-02. It appears from the record that the prospective jurors were in another room (not the courtroom) and that the courtroom clerk was communicating with court staff who were in that prospective juror holding room. The attorneys then confirmed there were no other preliminary issues that needed to be addressed. *Id.* at 1303.

Having concluded these preliminary discussions, the judge announced on the record in open court that "we'll be in recess and as soon as the questionnaires come in I'll let the attorneys get together in the jury room and I'll let Mr. Russell be there as well and we'll go through those to see — about hardship cases." *Id.* The court went into recess at 10:10 a.m. *Id.* The record does not indicate when precisely the work session in the jury room began, and there is no record of the work session itself. There is no indication whether the door to the jury room was open or closed during the work session or whether any member of the press or the public requested or was denied access to the session. There is no indication that any prospective jurors were questioned during the work session.

The court reconvened at 12:19 p.m. *Id.* Thus, while the record does not state precisely how long the work session was, it could not have been longer than

two hours and nine minutes. It is not apparent from the record whether the panel of 76 prospective jurors was brought into the courtroom before or after the judge, the attorneys, and Russell reentered the courtroom. *Id.* The judge stated the name of the case and those present in the courtroom for the record, introduced himself and the attorneys, and explained to the prospective jurors that the case had been transferred from Whitman County. *Id.* at 1303-06. He then explained that he had gone through the juror questionnaires with the attorneys and Russell to look for "severe hardship issues . . . [a]nd very shortly here I am going to go through the list of — jurors that will automatically be excluded or excused from this case — because of hardship reasons." *Id.* at 1307. The judge also noted that "some of you that listed hardships will not automatically be excluded — there'll be some further inquiry and then the Court will be making the decision." *Id.*

After thanking all the jurors for coming in and stressing the value of their service, *id.* at 1307-09, the judge announced jurors who would be excused for hardship without any oral questioning, *id.* at 1309-10. Those jurors were not excused from juror service altogether—they remained "on call for other Cowlitz County cases." *Id.* at 1309. The judge instructed those who had not been excused "to remain in attendance and — there will be some inquiries on other individuals that listed grounds that they felt were hardship and I want to inquire a little further here — very shortly here." *Id.* at 1310.

5

The judge made preliminary remarks, *id.* at 1311-26, and administered the oath to the remaining jurors, *id.* at 1327. He then orally questioned jurors who had requested to be excused for "hardship reasons or based on employment-type reasons" but had not already been excused based on their questionnaires. *Id.* The judge first addressed the concerns of jurors with physical impairments. *Id.* at 1329-32, 1336, 1337-43, 1356-58, 1365. The judge excused some jurors who would not be able to sit comfortably for extended periods, but reiterated that the excused jurors would need to "check back in" because the court "might try to get you in a shorter case." *Id.* at 1358.

The judge also questioned jurors who had preexisting commitments and employment-related issues that might make it a hardship to serve for the full three-to-four-week trial. *Id.* at 1333-34, 1344-46, 1349-56, 1358-69, 1372. The judge decided some of those issues after talking to the jurors, and he deferred decision on others pending a discussion with the attorneys. He also requested that some jurors look into making alternate arrangements and report back the next day.

The judge then announced he would step into the hallway with the attorneys and Russell for an on-the-record sidebar discussion regarding the remaining hardship requests.[4] *Id.* at 1372-83. Russell's attorney generally took a broad approach, supporting excusal of jurors who might "have distractions." *Id.* at 1377.

---

[4]Russell does not assign error to the sidebar discussion.

6

The judge, the attorneys, and Russell then returned to the courtroom, and the judge excused two more jurors for hardship. *Id.* at 1381, 1383.

Before dismissing the remaining jurors for the evening, the judge noted on the record that there was a "television camera" and "other members of the media" present, but the record does not indicate how long they had been there or if there were any other members of the public present. *Id.* at 1387. The judge instructed the prospective jurors not to discuss the case among themselves or with anyone else and to avoid all media coverage of the case, *id.* at 1386-88, and dismissed them for the evening, *id.* at 1390. To ensure there would be enough jurors, the judge requested 15 additional jurors for the next day, who would fill out the same questionnaire and be subject to the same hardship excusal process. *Id.* at 1521-22.

The next day, the court began with an in-court, on-the-record hearing outside the jurors' presence regarding pretrial evidentiary motions. 10 TrP (Oct. 16, 2007) at 1529. Meanwhile, the 15 newly summoned jurors filled out their questionnaires, which were again copied for review by the judge and counsel. *Id.* at 1537. The judge announced on the record in open court that they would have another work session to "go through and do like we did yesterday or at least determine hardships" once those questionnaires were copied. *Id.* The record does not indicate whether any members of the media or the public were in the courtroom

7

when the judge made that announcement. The court then resumed hearing pretrial motions.

The clerk notified the judge that the 15 new jurors had completed their questionnaires. *Id.* at 1543. After some further argument on pretrial motions, the court noted it was now nine o'clock, asked about the questionnaires, *id.* at 1562, and announced that "[o]nce they're all copied we'll take a break and review those," *id.* at 1563. After confirming with the clerk that all the new jurors' questionnaires had been copied, *id.* at 1567, the judge announced the court would recess for another work session, "retire to the jury room briefly[,] and try to sort out the hardship requests," *id.* at 1570.

The court recessed at 9:08 a.m., *id.*, and there is no indication in the record whether any members of the public or the media were present in courtroom at that time. The record does not indicate whether the work session began immediately or after a break, and there is no record of the work session itself. There is no indication whether the door to the jury room was open or closed during the work session or whether any member of the press or the public requested or was denied access to the session. There is no indication that any prospective jurors were questioned during the work session.

The court reconvened at 10:08 a.m. *Id.* Thus, while the record does not indicate precisely how long the work session was, it could not have lasted more

8

than one hour. It is not apparent from the record whether the prospective jurors were brought into the courtroom before or after the judge, the attorneys, and Russell reentered the courtroom. *Id.* The clerk announced court was back in session, *id.*, and the judge explained to the new jurors that the trial was expected to last three to four weeks and "a couple of the issues that were addressed — in the jury questionnaire related to — hardship issues; whether or not it would create a hardship for a particular juror to have to serve — for a lengthy period of time in this case." *Id.* at 1571.

The judge then explained that he had gone through the questionnaires with the attorneys and announced on the record in open court which of the 15 newly summoned jurors would be excused for hardship without oral questioning. *Id.* at 1572-73. No jurors who had been there the day before were excused immediately after the second work session. *Id.* at 1573. The judge told the excused jurors that they would need to check back in with the bailiff because they "may be called in for another trial, a shorter trial." *Id.* The judge then questioned other jurors who had made hardship requests, revisited those jurors who had needed to look into alternate arrangements, and issued oral decisions on the record in open court. *Id.* at 1574-81.

After the preliminary hardship determinations were concluded,[5] the judge made preliminary remarks for the benefit of the new jurors, *id.* at 1581-97, and administered the oath to all those who had not been there the day before, *id.* at 1594. Then the court turned voir dire questioning over to the attorney for the State. *Id.* at 1597. Attorney voir dire took place on October 16, 17, and 18. At the end of the day on October 18, the attorneys exercised peremptory challenges and the final jury was announced.

Trial lasted until November 6, 2007. 28 TrP (Nov. 6, 2007) at 5175. The jury convicted Russell of three counts of vehicular homicide and three counts of vehicular assault. The Court of Appeals affirmed Russell's convictions, holding that the work sessions on the first two days of jury selection did not implicate Russell's public trial right because those sessions were concerned only with excusals for general hardship considerations, rather than case-specific, for-cause or peremptory challenges. *See State v. Russell*, noted at 161 Wn. App. 1002, slip op. at 47-55 (2011). The Court of Appeals remanded the case for the sole purpose of granting Russell credit for the time he spent in detention in Ireland while he was challenging extradition.

---

[5]One juror's initial hardship request was deferred. 10 TrP at 1579-80. Later, during attorney voir dire, the juror revealed an employment-related financial burden and she was excused for hardship at that time. 12 TrP (Oct. 17, 2007) at 1908-10.

This court deferred consideration of Russell's petition for review pending final decisions in *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012), *State v. Slert*, 181 Wn.2d 598, 334 P.3d 1088 (2014), and *State v. Njonge*, 181 Wn.2d 546, 334 P.3d 1068 (2014). On February 4, 2015, we granted Russell's petition for review only as to the public trial issues. 182 Wn.2d 1001, 342 P.3d 326 (2015).

## ISSUES

A.    Did the trial court's work sessions in the jury room with the attorneys and Russell to review juror questionnaires for hardship issues implicate the public trial right?

B.    Should this court revisit its application of the structural error doctrine in public trial rights cases?

## ANALYSIS

Experience and logic show that the public trial right was not implicated by the two work sessions regarding preliminary hardship issues raised by the juror questionnaires,[6] and we affirm the Court of Appeals. In light of this determination, we will not revisit our approach to structural error at this time.

A.    The public trial right was not implicated by the work sessions

Where there is no directly controlling precedent determining whether the public trial right is implicated by a particular proceeding, we use the experience

---

[6]To the extent Russell speculates that the public trial right was implicated because other matters may have come up during the work sessions, *see* Am. Pet. for Review at 15, it is his burden on appeal to provide a record showing that the public trial right was implicated, *State v. Koss*, 181 Wn.2d 493, 503, 334 P.3d 1042 (2014). He has not done so.

and logic test. *Njonge*, 181 Wn.2d at 553-54.[7] Neither experience nor logic

indicates that the public trial right is implicated by work sessions to review juror

questionnaires for hardship issues.

1. There is no indication that proceedings like the work sessions held in this case have historically been open to the press and the public

As Russell correctly argues, jury selection, and particularly voir dire,

implicates the right to a public trial. *State v. Brightman*, 155 Wn.2d 506, 515, 122

P.3d 150 (2005). However, "jury selection" encompasses significantly more than

attorney voir dire, and the mere label of "jury selection" does not mean the public

trial right is automatically implicated. *State v. Wilson*, 174 Wn. App. 328, 338,

298 P.3d 148 (2013). Relevant cases, statutes, and court rules show that, as a

matter of experience, Russell's public trial right was not implicated when the

judge, Russell, and the attorneys held work sessions to review juror questionnaires

for hardship.

The public trial right is not implicated by preliminary excusals for statutory

reasons (including hardship) based on juror questionnaires. *See Slert*, 181 Wn.2d

at 605-06 (González, J., lead opinion), 614 (Stephens, J., dissenting); *State v.*

*Schumacher*, ___ Wn. App. ___, 347 P.3d 494, 500-01 (2015). Determining

---

[7]*Njonge* considered the public trial right implications of juror hardship excusals, but we resolved that case with a holding that the record did not establish that the hardship determination process was closed to the public. *Njonge*, 181 Wn.2d at 558.

whether a juror is able to serve at a particular *time* or for a particular *duration* (as in hardship and administrative excusals) is qualitatively different from challenging a juror's ability to serve as a neutral factfinder in a particular *case* (as in peremptory and for-cause challenges). *See In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 117, 340 P.3d 810 (2014) (C. Johnson, J., lead opinion); *In re Pers. Restraint of Speight*, 182 Wn.2d 103, 105, 340 P.3d 207 (2014) (C. Johnson, J., lead opinion); *cf. State v. Irby*, 170 Wn.2d 874, 882, 246 P.3d 796 (2011) (drawing the distinction in the context of the defendant's right to be present). In addition to our own case law, this distinction is supported by the statutes and rules regarding juror selection proceedings. *See* GR 28(a) (setting forth "procedures for postponing and excusing jury service under RCW 2.36.100 and 2.36.110 and for disqualifying potential jurors under RCW 2.36.070"), (b)(3) (explicitly distinguishing between excusal for statutory reasons and "peremptory challenges or challenges for cause that fall outside the scope of this rule"); CrR 6.4 (governing voir dire, challenges for cause, and peremptory challenges).

We must "consider the actual proceeding at issue for what it is, without having to force every situation into predefined factors," *Sublett*, 176 Wn.2d at 73 (C. Johnson, J., lead opinion). The record indicates that the actual proceedings here—the work sessions—consisted of the trial judge, Russell, and the attorneys sitting in the jury room and reviewing the jurors' written questionnaires for

13

potential hardship issues. No jurors were questioned during those work sessions. The judge announced all his excusal decisions in open court and clearly stated that the excusals immediately following the work sessions were based on hardship. Those jurors were not disqualified or excused from service altogether—the judge mentioned several times on the record that they might be called back to serve on a shorter case. And the judge did question many jurors about hardship in open court, strongly indicating that the judge did not excuse any juror without oral questioning unless the judge, the attorneys, and Russell agreed that excusal for hardship was justified based on the questionnaire alone. *Cf. In re Det. of Morgan*, 180 Wn.2d 312, 326, 330 P.3d 774 (2014) (holding the experience prong is not met for proceedings "akin to a status conference").

Proceedings like the work sessions here have not historically been open to the press or general public. The experience prong is not met.

2.   Logic does not require work sessions to review juror questionnaires for hardship issues to be conducted in open court

As a matter of logic, the purposes of the public trial right would not be served by requiring work sessions like the ones at issue here to be conducted in open court. No jurors were questioned during the work sessions, so the purposes of discouraging perjury and encouraging witnesses to come forward would not be advanced. *See id.* at 325. The trial judge announced the work sessions before they occurred, explained what occurred during the work sessions afterwards, announced

14

all his decisions in open court, and specified that the excusals were based on hardship. The work sessions therefore did not involve the kind of secret decision-making that would undermine legitimacy or public confidence in judicial proceedings. *See id.* The judge's announcements on the record, coupled with Russell's personal participation in the work sessions, also served to remind the court and the attorneys of their duties to Russell and to the public. *See id.*

Neither the experience nor the logic prong is met, and the public trial right was not implicated by the work sessions. To avoid appeals like this one, we strongly encourage trial courts to conduct all proceedings in open court (or conduct on-the-record *Bone-Club* analyses before removing any proceedings from open court), even if the public trial right is not (or is unlikely to be) implicated.

B.     We do not revisit our application of the structural error doctrine in this case

The State and allied amici urge us to revisit our application of the structural error doctrine in public trial cases. Any such discussion would be unnecessary to the resolution of this case, and we decline to reconsider the structural error doctrine as applied to the public trial right in dicta.

## CONCLUSION

The public trial right was not implicated by the work sessions the trial court held with Russell and the attorneys to review the juror questionnaires for hardship issues. We affirm the Court of Appeals.

_____
                                    Yu, J

WE CONCUR:


_____          _____
Madsen, C.J.


_____          _____
Johnson, J                                 Wiggins, J


_____          _____
Owens, J                                   González, J


_____          _____
Fairhurst, J.

No. 85996-5

GORDON McCLOUD, J. (concurring in result)—The single question

presented in this case is whether the right to open justice and a public courtroom

applies to preliminary hardship determinations based on written jury questionnaires,

where, as here, the judge memorializes those decisions immediately afterward on

the record in open court.[1] I agree with the majority that the answer to that question

is no.

However, I disagree with the majority's additional dicta and I write separately

to make clear that it is unnecessary to our decision in this case.

First, the majority makes clear that the two preliminary hardship

determination discussions at issue occurred outside of the courtroom, in a separate

"'jury room,'" during what was clearly a recess. Majority at 3-4 (quoting 9 Tr. of

Proceedings (TrP) (Oct. 15, 2007) at 1297 (portion of transcript showing that court

---

[1] As we all agree, the right to a public trial is guaranteed by both the Washington
(CONST. art. I, §§ 10, 22) and United States (U.S. CONST. amends. I, VI) constitutions.

recessed at 10:10 a.m. and reconvened at 12:19 p.m. and that the jury room session occurred in the interim)). In fact, the second such jury room discussion is characterized by the trial judge himself as something that would occur after he "'retire[d]'" to that "jury room." Majority at 8 (quoting 10 TrP (Oct. 16, 2007) at 1570). But the majority then twice calls out the fact that the transcript is silent about whether the door to that jury room was open or closed during this recess and even characterizes it as a "work session" rather than a recess. Majority at 4 ("There is no indication whether the door to the jury room was open or closed during the work session or whether any member of the press or the public requested or was denied access to the session."), 8 ("There is no indication whether the door to the jury room was open or closed during the work session . . . .").

The majority's citations to the record are certainly accurate. But they are irrelevant and therefore misleading. They tend to imply that whether the door to a jury room or judge's chambers is open or closed is relevant to determining whether a proceeding that occurs in there—during a "recess" when the parties and the court "retired" to that location—is really open or closed. That is incorrect. We have held that retiring to such a separate and presumptively private setting outside of the public courtroom constitutes a courtroom closure. In *State v. Frawley*, 181 Wn.2d 452, 334 P.3d 1022 (2014), for example, we considered two consolidated cases raising

2

courtroom closure issues. In one of them, the judge and counsel retired to the judge's chambers to conduct certain voir dire proceedings—and we began by addressing whether that constituted a courtroom closure. We noted that the record showed that the door to the judge's chambers was open, the judge purposely left it open, and the judge subjectively characterized his decision to leave the door open as somehow creating another open courtroom in chambers: "The court stated multiple times throughout this discussion and at the in-chambers questioning of the juror that the individual questioning had to and did remain a public proceeding. During the in-chambers questioning, the judge stated for the record, "'The inner and outer door to my chambers are open. The courtroom door is closed, but this must remain a public proceeding.'" *Id.* at 457-58 & n.6. But we rejected the notion that keeping the door to that separate, private room open created a little public courtroom right there in chambers. Instead, we treated it as a case in which the courtroom was closed. *Id.* at 460 ("In both cases, the in-chambers questioning of jurors constituted a closure of the courtroom under [*State v.*] *Wise*, 176 Wn.2d 1[, 288 P.3d 1113 (2012)]."). The court decided that case, instead, on waiver issues.

If leaving the door to chambers open did not create an open-chambers courtroom in that case, then silence about leaving the doors to the jury room open cannot create an open-jury-room courtroom in this case. Retiring to a jury

3

deliberation room, like retiring to chambers, is leaving the courtroom, and the public, behind.

Next, the majority discusses structural error—even though it finds no error in the first place. The majority certainly does not depart from our settled precedent applying structural error analysis to courtroom closure errors. But it states that the reason it adheres to precedent is because the case did not present a proper vehicle for revisiting that precedent. Majority at 11 ("In light of this determination [that the public trial right does not attach to juror hardship determinations], we will not revisit our approach to structural error at this time."), 15 ("we decline to reconsider the structural error doctrine as applied to the public trial right in dicta").

I agree that we need not address what type of error occurred because *no* error occurred. But I disagree with the dicta that undermines our structural error jurisprudence. We have treated violations of the constitutional public trial right as structural error, in criminal cases, for the last 20 years, since *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). *See, e.g., State v. Paumier*, 176 Wn.2d 29, 33, 288 P.3d 1126 (2012); *State v. Wise*, 176 Wn.2d 1, 7, 288 P.3d 1113 (2012); *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009); *State v. Easterling*, 157 Wn.2d 167, 137 P.3d 825 (2006).

I therefore respectfully disagree with the dicta in the majority's opinion. But I concur in the result.

_Gordon McCloud, J._

_Stephens, J._