2016 MAR 21 AM 9: 1


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) ) ) ) ) ) | No. 71377-9-I |
| JUSTIN CASTILLO, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | FILED: March 21, 2016 |

PER CURIAM. Justin Castillo challenges his convictions and sentence in King County Superior Court Case No. 08-1-00970-6 SEA. After the jury in Castillo's first trial could not agree on a verdict, the jury in a second trial convicted Castillo of two counts of first degree rape of a child and one count of first degree child molestation. On appeal, this court affirmed the convictions and sentence in an unpublished opinion. State v. Castillo, noted at 169 Wn. App. 1023, 2012 WL 2989248. In order to obtain collateral relief by means of a personal restraint petition, Castillo must demonstrate either an error of constitutional magnitude that gives rise to actual prejudice or a nonconstitutional error that inherently results in a "'complete miscarriage of justice.'" In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 458, 7 L. Ed. 2d 417 (1962)). Because Castillo has not made such a showing, his petition is denied.

## Sufficiency of the Evidence

First, Castillo challenges the sufficiency of the evidence supporting his convictions. In reviewing a challenge to the sufficiency of the evidence, the test is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

In Castillo's direct appeal, this court recited the following facts:

At the second trial, the State's evidence established that P and her mother resided with Castillo for most of four years. Castillo often cared for P and her cousin A, who also lived in the home.

P testified that Castillo raped her when she was five or six years old. They were driving to McDonald's with A, who was also five. Castillo, who was then 17 or 18 years old, stopped in a parking lot and had P perform oral sex on him. Castillo told P that if she told anyone, he would hurt her mother. A testified that he did not remember this incident.

P testified that another incident of oral sex in a car occurred sometime during the next year. A was not present during this incident. P recalled kneeling under the steering wheel in order to perform the act.

During this same time, P alleged that Castillo would come into the bedroom she shared with her mother and tell P to come with him. They would then have intercourse in the living room. P testified that this happened many times, but she had a complete memory of only one occasion.

2

P did not tell anyone about the rapes because Castillo had told her he would hurt her mother if she did. She was also afraid that disclosing the incidents would divide her family.

P first disclosed the rapes to several friends in 2006. In November 2006, P's father found a note in which P and a school friend traded comments about P being sexually abused. He took P to a medical clinic for a sexual assault examination. P told a pediatric nurse practitioner that she had been sexually abused for several years by her uncle who had moved to California. The nurse notified Child Protective Services (CPS). CPS contacted police.

P's cousin, A, testified that he and P were roughly the same age and lived in the same house with Castillo. A alleged that Castillo forced him to have sexual contact with P in the garage when he was between 4 and 6 years old. A said Castillo guided his penis into P's vagina. Immediately afterward, Castillo asked P to perform oral sex on him and directed A to act as a lookout. P testified that she did not recall this incident. A did not disclose this incident until the 2007 investigation of P's rape allegations. P alleged other sexual assaults by Castillo in Pierce County and California, but the defense succeeded in excluding them.

Castillo, 2012 WL 2989248 at *1.

Citing State v. Hayes, 81 Wn. App. 425, 914 P.2d 788 (2009), and State v. Edwards, 171 Wn. App. 379, 294 P.3d 708 (2012), Castillo argues that the victims' "generic testimony" was not specific enough to sustain his convictions. Personal Restraint Petition (PRP) at 25-28. In Hayes, this court adopted a three-part test to assess the specificity of evidence in such child molestation cases, concluding that "the evidence need only be specific as to the type of act committed, the number of acts committed, and the general time period." Hayes, 81 Wn. App. at 437. In Edwards, Division Two of this court held that evidence that did not "clearly delineate between specific and distinct incidents of sexual abuse during the charging period"

3

was insufficient to convict the defendant of two separate and distinct counts of first degree child molestation. Edwards, 171 Wn. App. at 403.

Castillo's claim fails. The victim, P, testified about two specific rapes in a car, alleging that Castillo forced her to perform oral sex on him. P also testified about a rape that occurred in the home where she and Castillo both lived at the time. Finally, P's cousin A testified that Castillo forced him to have sexual contact with P. Contrary to Castillo's assertion in his petition, these were not "'general instances' of abuse," PRP at 27, but sufficiently specific as to the type and number of acts committed and the general time period. P's and A's testimony clearly delineated between specific and distinct incidents of sexual abuse during the charging period and sufficiently supported Castillo's convictions for rape of a child and child molestation.

Insofar as Castillo alleges "numerous inconsistencies" and "obvious contradictions" in the victims' testimony, PRP at 11, 12, this court noted in its decision on direct appeal that defense counsel highlighted these discrepancies at trial, focusing on both P's and A's credibility and memory issues. Castillo, 2012 WL 2989248 at *2. Thus, the jury had the opportunity to assess the witnesses' credibility and reliability, and this court is not in a position to reweigh the evidence the jury considered. "This court must defer to the trier of fact on issues involving conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence." State v. Hernandez, 85 Wn. App. 672, 675, 935 P.2d 623 (1997).

## Right to a Public Trial

Next, Castillo argues that the trial court violated his right to a public trial under article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution when it "closed the courtroom for substantial portions of jury selection, at the request of some of the jurors." PRP at 28.

During voir dire at Castillo's second trial, the court called a recess in order to respond to a question from Juror 69. State's Response (SR) at Appx. E, p. 79-80 (Supplemental Report of Proceedings for December 9, 2010). The court excused the rest of the jury venire to the hallway outside the courtroom and asked Juror 69 to take a seat near the bench. SR at Appx. E, p. 80. When Juror 69 asked to confer with the court in chambers, the court at first demurred: "There is the issue about the right to an open courtroom. That's my hesitancy. It wouldn't be ex parte because both lawyers would be present in chambers. Is there a very important reason why this can't be addressed in open court?" Juror 69 replied, "Yes," and the court said, "All right. Let's take this matter in chambers." SR at Appx. E, p. 80. Castillo, both counsel, and the court reporter were all present with the court and Juror 69 in chambers. SR at Appx. E, p. 81. Juror 69 then reported to the court an exclamation she had heard from a spectator in the courtroom during voir dire:

> (Juror 69): I'm sorry, Judge. When the prosecutor asked whether DNA evidence should be required, the woman sitting right of the door in the brown sweater said yes loud enough for me to hear and other jurors to hear. I do not know who she is. But, she said yes. And she said it loudly.

SR at Appx. E, p. 81.

5

The trial court learned from defense counsel that the spectator was Castillo's mother. SR at Appx. E, pp. 81-82. The court then directed that the jury be brought back in, and instructed the spectators in the courtroom:

> You may be seated. The Court is ordering all the observe[r]s in the courtroom not to say anything that is audible to anybody other than yourself, if you are together. You can whisper, but you are not to say anything that anybody else can hear. Is that understood? I am hearing a yes.

SR at Appx. E, p. 83.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to a public trial, which extends to the juror selection process. State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). Certain proceedings must be held in open court unless the five factors listed in State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995), justify closing the courtroom.[1] The wrongful deprivation of the public trial right is a structural error presumed to be prejudicial on direct appeal. Wise, 176 Wn.2d at 14.

Our Supreme Court has held that a petitioner claiming a public trial violation for the first time on collateral review must generally show actual and substantial prejudice. In re Pers. Restraint of Coggin, 182 Wn.2d 115, 116, 340 P.3d 810 (2014); In re Pers.

---

[1] The five factors are: (1) the proponent of closure must make a showing of compelling need, (2) any person present when the motion is made must be given an opportunity to object, (3) the means of curtailing open access must be the least restrictive means available for protecting the threatened interests, (4) the court must weigh the competing interests of the public and of the closure, and (5) the order must be no broader in application or duration than necessary. Bone-Club, 128 Wn.2d at 258-59.

Restraint of Speight, 182 Wn.2d 103, 104, 340 P.3d 207 (2014). But the court has recognized an exception in cases where the petitioner shows that appellate counsel failed to raise a meritorious public trial right violation on direct appeal. In In re Pers. Restraint of Morris, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012), the court held that it would presume prejudice where the petitioner alleged a public trial right violation by way of an ineffective assistance of appellate counsel claim because "[h]ad Morris's appellate counsel raised this issue on direct appeal, Morris would have received a new trial. No clearer prejudice could be established." (citation omitted). A defendant asserting a violation of the right to a public trial has the burden to show that a closure occurred. State v. Njonge, 181 Wn.2d 546, 556, 334 P.3d 1068 (2014); see also State v. Russell, 183 Wn.2d 720, 729 n.6, 357 P.3d 38 (2015); State v. Koss, 181 Wn.2d 493, 503-04, 334 P.3d 1042 (2014).

Our Supreme Court has adopted a three-step inquiry to analyze alleged violations of the right to a public trial. The threshold question is whether, under the experience and logic test, the proceeding at issue implicates the public trial right. State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). If the answer to this first question is yes, then the reviewing court considers whether there was a closure and, if so, whether the closure was justified. State v. Smith, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). But a reviewing court need not reach the second and third steps if it determines that the proceeding at issue does not implicate the right to a public trial. Smith, 181 Wn.2d at 519-20.

Under the experience and logic test, courts consider (1) "'whether the place and process have historically been open to the press and general public'" and (2) "'whether public access plays a significant positive role in the functioning of the particular process in question.'" Sublett, 176 Wn.2d at 73 (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)).

Here, Juror 69 wished to alert the trial court to a spectator's comment during voir dire in a setting outside the presence of that spectator. SR at Appx. E, p. 82. The juror's information did not have to do with the juror's qualifications to serve or with the specifics of Castillo's case. While Castillo attempts to analogize to cases in which trial courts closed portions of voir dire by questioning jurors in chambers, see, e.g., Wise, 176 Wn.2d at 9-20 (collecting cases), his case is more like State v. Rivera, 108 Wn. App. 645, 653, 32 P.3d 292 (2001). In that case, this court held that closing the courtroom for a hearing on one juror's complaint about another juror's personal hygiene did not violate the defendant's right to a public trial.[2] Since then, appellate courts in Washington have determined that a variety of alleged closures do not implicate the right to a public trial. See, e.g., State v. Wilson, 174 Wn. App. 328, 342, 298 P.3d 148 (2013) (administrative juror excusals); Smith, 181 Wn.2d at 519 (sidebars or evidentiary conferences); Koss, 181 Wn.2d at 495-96 (jury instructions conference); State v. Slert, 181 Wn.2d 598, 606-07, 334 P.3d 1088 (2014) (in-

---

[2] Although in Sublett, our Supreme Court rejected the Court of Appeals' "ministerial" versus "adversarial" analysis in this and other cases involving public trial issues, the court denied review in Rivera. Sublett, 176 Wn.2d at 72; see also State v. Rivera, 146 Wn.2d 1006, 45 P.3d 551 (2002).

chambers examination of jury questionnaires); Sublett, 176 Wn.2d at 76-77

(conference to discuss question from a deliberating jury).

Here, Castillo does not show either that the chambers conference constituted a proceeding that has been historically open to the public or that public access plays a significant positive role in the functioning of such a proceeding. Moreover, the conference was "contemporaneously memorialized and recorded, thus negating any concern about secrecy." Smith, 181 Wn.2d at 518. And the trial court promptly instructed observers in the courtroom according to the results of the conversation. Because he fails to meet either prong of the experience and logic test, Castillo does not establish that the chambers conference implicated his public trial right. Therefore, no closure occurred, and the trial court did not violate his right to a public trial.

Castillo's petition is denied.

FOR THE COURT:

9