

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| IN THE MATTER OF THE PERSONAL RESTRAINT OF: | ) ) ) ) ) | No. 68699-2-I |
| ISMAIL HASSAN, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | FILED: March 21, 2016 |

PER CURIAM. In 2009, a jury convicted Ismail Hassan of two counts of assault in the first degree with a firearm enhancement. Hassan filed this personal restraint petition contending that several of his family members were excluded from the courtroom during jury selection, violating his right to a public trial. He also alleges that he suffered prejudice one day during trial when jurors entered the courtroom before deputies had finished removing his shackles. And he argues that his attorney's failure to request an instruction on the lesser included offense of assault in the second degree constituted ineffective assistance of counsel. Because Hassan does not establish grounds for relief, we deny his petition.

## Right to a Public Trial

The State charged Hassan with two counts of assault in the first degree with a firearm enhancement. The charges arose from a shooting near the apartment complex where he lived. The two counts named a total of six victims, who were in two cars during

the shooting. Personal Restraint Petition (PRP) at Appendix (Jury instructions 15 and 16); State v. Hassan, noted at 158 Wn. App. 1029, 2010 WL 4409691, at *1.

The first week of trial, defense counsel voiced concerns about space constraints in the courtroom during jury selection:

> Your Honor, may I just interrupt one second, because the jury selection—once we have some of the jurors in here, once we have all 50, there's not room for all [Hassan's] family members. I was informed that it would be okay to place a chair there, is that okay with you?

Report of Proceedings (RP) (4/14/09) at 3. The trial court then asked security officers if family members could sit in a corner of the front bench, acknowledging that this area was routinely kept empty at the direction of court security. RP (4/14/09) at 3. When the officer confirmed that no spectators could sit on the front bench, the court responded, "Okay. Yeah, we can set up some chairs." RP (4/14/09) at 3. Defense counsel replied, "Or just one, there probably won't be enough for three, and I've already informed them." RP (4/14/09) at 4. After some discussion off the record, pretrial hearings continued with the defendant's testimony. RP (4/14/09) at 4.

After pretrial hearings concluded, the court asked that the prospective jury members be brought in and gave directions to those present in the courtroom. RP (4/14/09) at 32. The judge informed one spectator that if his cell phone rang again, he would exclude him from the courtroom. RP (4/14/09) at 32. As the venire prepared to enter the courtroom, the judge stated, "If you want to move your chairs around, you can do that. The other visitors will have to leave." RP (4/14/09) at 38. It is not clear from the context whom the court is addressing. The court welcomed and swore in the venire

members. RP (4/14/09) at 39-43. The court then questioned panel members about hardship. RP (4/14/09) at 50-64. Outside the presence of the venire, the court and counsel then discussed jurors' hardship claims, and the court excused 14 potential jurors. RP (4/14/09) at 67.

After the panel members returned, the judge noted that seats had opened up in the courtroom: "For those of you who have holes next to you where people have been excused, you don't actually have to leave the hole there for them." RP (4/14/09) at 67. Substantive voir dire of the remaining panel members followed, and the court swore in a jury. RP (4/14/09) at 71-188. Before recessing for the day, the court addressed spectators: "And I'll again remind my visitors that they're not to talk or interact with any members of the jury in this case." The court also repeated the earlier warning to silence cell phones before entering the courtroom. RP (4/14/09) at 239.

The parties proposed instructions for only the crime of assault in the first degree. During closing argument, both the State and the defense emphasized that in order to convict Hassan, the jury had to find beyond a reasonable doubt that Hassan had committed assault in the first degree. RP (4/29/09) at 6-7, 20, 22-23, 53, 58-59.

The jury convicted Hassan as charged, and the trial court imposed a standard range sentence. Hassan appealed. Appellate counsel, who also represents Hassan in this petition, did not raise a public trial claim on direct appeal. In an unpublished opinion, State v. Hassan, 158 Wn. App. 1029, 2010 WL 4409691 (2010), this court affirmed Hassan's convictions. Hassan now files this timely personal restraint petition.

In his petition, Hassan submits his own declaration and declarations from his trial counsel and four family members stating that court personnel escorted the family members out of the courtroom during jury selection, despite their desire to be present. PRP at Appendix (Declarations of Peter Geisness, Ismail Hassan, Halima Ismail Jama, Guhaad Mohamud Ahmed, Mariam Ismail Jama, and Ayan Osman Hassan). Hassan's and defense counsel's declarations also state that despite the court's apparent willingness to set up extra chairs for family members, security officers did not permit it. PRP at Appendix (Declarations of Peter Geisness at ¶ 7and Ismail Hassan at ¶ 2). Defense counsel also states, however, "I do not recall if accommodations were made to allow one family member to remain in the courtroom during voir dire," and "I do not recall if the excluded family members were permitted to occupy open seats once the number of prospective jurors was reduced throughout the process of voir dire." PRP at Appendix (Declaration of Peter Geisness at ¶ 7and ¶ 9).

Hassan contends that exclusion of his family members during jury selection violated his right to a public trial. PRP at 6. In order to obtain collateral relief by means of a personal restraint petition, he must demonstrate either (1) an error of constitutional magnitude that gives rise to actual prejudice or (2) a nonconstitutional error that "constitutes a fundamental defect which inherently results in a complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a criminal defendant the right to a public trial.

State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). Additionally, article I, section 10 of the Washington Constitution guarantees the public's open access to judicial proceedings. State v. Easterling, 157 Wn.2d 167, 174, 137 P.3d 825 (2006). To protect both rights, certain proceedings must be held in open court unless application of the five-factor test in State v. Bone-Club, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) supports closure of the courtroom.[1]

There is a strong presumption that courts are to be open at all stages of trial. State v. Sublett, 176 Wn.2d 58, 70, 292 P.3d 715 (2012). It is well established that the public trial right in voir dire proceedings extends to the questioning of individual prospective jurors. Wise, 176 Wn.2d at 16-19. "However, 'jury selection' encompasses significantly more than attorney voir dire, and the mere label of 'jury selection' does not mean the public trial right is automatically implicated." State v. Russell, 183 Wn.2d 720, 357 P.3d 38, 43 (2015). The wrongful deprivation of the public trial right is a structural error presumed to be prejudicial on direct appeal. Wise, 176 Wn.2d at 14. But a defendant asserting a violation of the right to a public trial has the burden to show that a closure occurred. State v. Njonge, 181 Wn.2d 546, 556, 334 P.3d 1068 (2014); see also Russell, 357 P.3d at 42 n.6; State v. Koss, 181 Wn.2d 493, 503, 334 P.3d 1042 (2014).

---

[1] The five factors are: (1) the proponent of closure must make a showing of compelling need, (2) any person present when the motion is made must be given an opportunity to object, (3) the means of curtailing open access must be the least restrictive means available for protecting the threatened interests, (4) the court must weigh the competing interests of the public and of the closure, and (5) the order must be no broader in application or duration than necessary. Bone-Club, 128 Wn.2d at 258-59.

Our Supreme Court has held that "not every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." Sublett, 176 Wn.2d at 71. Before deciding if a trial court violated a defendant's right to a public trial, a reviewing court must determine if "the proceeding at issue implicates the public trial right, thereby constituting a closure at all." Sublett, 176 Wn.2d at 71; see also State v. Beskurt, 176 Wn.2d 441, 446, 293 P.3d 1159 (2013). In State v. Sublett, 176 Wn.2d 58, 72-75, 292 P.3d 715 (2012), the Court adopted the "experience and logic" test articulated by the United States Supreme Court in Press–Enterprise Co. v. Superior Court, 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) (Press II), to determine if a particular process must remain open to the public absent a Bone-Club analysis. The "experience" prong of this test asks "'whether the place and process have historically been open to the press and general public.'" Sublett, 176 Wn.2d at 73 (quoting Press II, 478 U.S. at 8). "The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" Sublett, 176 Wn.2d at 73 (quoting Press II, 478 U.S. at 8). If the answer to both questions is yes, the public trial right attaches, and the trial court must apply the Bone-Club factors on the record before closing the proceeding to the public. Sublett, 176 Wn.2d at 73.

Hassan contends that he is entitled to reversal of his convictions and a new trial because his case is "virtually indistinguishable" from In re Pers. Restraint of Orange, 152 Wn.2d 795, 100 P.3d 291 (2005). PRP at 14. In that case, the trial court expressly ruled that "no family members, no spectators will be permitted into this courtroom during the

selection of the jury because of the limitation of space, security, etcetera [sic]." Orange, 152 Wn.2d at 807-08. Our Supreme Court held that the court's ruling "effected, at a minimum, a temporary, full closure, the precise type of closure to which the Bone-Club court applied the five, well-settled guidelines." Orange, 152 Wn.2d at 808. The Court "adopt[ed] verbatim the holding in Bone-Club: 'We hold the trial court's failure to follow the five-step closure test . . . violated Defendant's right to a public trial under section 22.'" Orange, 152 Wn.2d at 812 (quoting Bone-Club, 128 Wn.2d at 261). The Court reversed and remanded for a new trial. Orange, 152 Wn.2d at 822.

While Hassan is correct that a closure can occur absent an express order such as the one at issue in Orange, he has not presented evidence from the record showing any closure here. The record does not support counsel's and Hassan's assertions that court security overrode the trial court's statement that "we can set up some chairs." While the court did say, "The other visitors will have to leave" in order to accommodate the jury venire, trial counsel acknowledges in his declaration the possibility that one family member was accommodated as planned.

In State v. Njonge, 181 Wn.2d 546, 334 P.3d 1068 (2014), our Supreme Court considered a public trial claim where the trial court similarly contended with space constraints during jury selection. In that case, the trial court warned observers, "Tomorrow when we have the jury selection, there will not be room for all of you. . . . The chance of all of you being able to be here and observe are slim to none during the jury selection process." Njonge, 181 Wn.2d at 550. There was no express order relating to a closure,

7

and the record did not show any observer being asked to leave the courtroom. Njonge, 181 Wn.2d at 552. The record showed that after hardship excusals had reduced the number of prospective jurors in the courtroom, more visitors were accommodated. Njonge, 181 Wn.2d at 551. This court ordered a new trial, concluding that the trial court improperly closed the courtroom during hardship excusals. State v. Njonge, 161 Wn. App. 568, 572, 255 P.3d 753 (2011).

Our Supreme Court reversed, holding that the record did not establish that observers were excluded from the courtroom during hardship excusals. Njonge, 181 Wn.2d at 561. The Court observed, "We have required a better factual record to find a violation of this magnitude." Njonge, 181 Wn.2d at 558. Because it concluded that no closure occurred, the Court analyzed the case "'as a matter of courtroom operations, where the trial court judge possesses broad discretion.'" Njonge, 181 Wn.2d at 558 (quoting State v. Lormor, 172 Wn.2d 85, 93, 257 P.3d 624 (2011)). The Court concluded, "Here, the trial court acted well within its discretion to regulate overcrowding in the courtroom." Njonge, 181 Wn.2d at 558.

This case is more like Njonge than Orange. The factual record does not show that all of Hassan's family members or the public were excluded. Instead, the record shows the trial court acting within its discretion to regulate overcrowding while accommodating spectators in the courtroom.

Even if Hassan did show a closure during the first part of jury selection, his public trial claim would fail. In State v. Russell, 183 Wn.2d 720, 357 P.3d 38, 43 (2015), our

8

Supreme Court recently held that "[t]he public trial right is not implicated by preliminary excusals for statutory reasons (including hardship) based on juror questionnaires." These preliminary discussions and excusals had occurred in chambers. Russell, 357 P.3d at 39-40. In its decision, our Supreme Court emphasized, "No jurors were questioned during these work sessions. The judge announced all his excusal decisions in open court and clearly stated that the excusals immediately following the work sessions were based on hardship." Russell, 357 P.3d at 43.

The Supreme Court's decision in Russell is consistent with that of Division Two of this court in State v. Wilson, 174 Wn. App. 328, 298 P.3d 148 (2013), review denied, No. 88818-3 (Wash. Jan. 5, 2016). Applying the experience and logic test, Division Two concluded that the right to a public trial does not attach to the hardship excusal phase of jury selection. Wilson, 174 Wn. App. at 346-47. Here, the record shows that at least 14 seats became available for Hassan's family and other members of the public once the trial court completed its hardship excusals. If any closure occurred, it did not extend past the hardship excusal phase of jury selection. Hassan does not show that the court violated his right to a public trial.

Hassan also alleges that "to the extent that trial counsel's failure to register an adequate objection [to the court's exclusion of family members] results in a failure to preserve the issue, then counsel was ineffective." PRP at 14-15. However, Hassan makes no further argument or citation to authority. "To establish ineffective assistance of appellate counsel, a petitioner must establish that (1) counsel's performance was

9

deficient and (2) the deficient performance actually prejudiced the defendant." In re Pers. Restraint of Morris, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012). "[W]here appellate counsel fails to raise a public trial right claim, where prejudice would have been presumed on direct review, a petitioner is entitled to relief on collateral review." Morris, 176 Wn.2d at 161. Here, unlike the defendants in Orange and Morris, Hassan raises no claim presumed prejudicial on direct review.

Hassan argues in the alternative that this court should remand for a reference hearing to determine the facts of the alleged closure. Br. of Reply of Pet'r at 8. But to obtain such an evidentiary hearing, Hassan must present admissible evidence supporting the facts he alleges in his petition. In re Pers. Restraint of Yates, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). Here, his declarations and the record do not show either that a closure occurred or that the right to a public trial attaches to the proceeding he alleges was closed. He does not show entitlement to a reference hearing.

### Shackles and Enhanced Security Measures

In his declaration, Hassan asserts that on one day during his trial, deputies had not finished removing his shackles when the jury entered the courtroom:

> I was brought to court each day in shackles. The shackles were on my legs, waist, and wrists. On one of the days when I was brought to court, the officer was still taking off my leg shackles when the jury was being brought into the court room. Several jurors looked right at me and the jail officer who was removing the shackles. I do not remember where my attorney was when this happened. He might have been in the judge's chambers.

PRP at Appendix. (Declaration of Ismail Hassan, ¶ 4). Hassan contends that this violated his right to due process. PRP at 15.

Shackling may imperil a defendant's right to a fair trial by reversing the presumption of innocence. State v. Hutchinson, 135 Wn.2d 863, 887-88, 959 P.2d 1061 (1998). But Washington courts have never held that "[t]he mere fact that a jury sees an inmate wearing shackles" mandates reversal of a conviction. State v. Rodriguez, 146 Wn.2d 260, 270, 45 P.3d 541 (2002). Instead, "a defendant must show prejudice, that is, 'a substantial or injurious effect or influence on the jury's verdict.'" State v. Elmore, 139 Wn.2d 250, 274, 985 P.2d 289 (1999) (quoting Hutchinson, 135 Wn.2d at 888.) Even where a defendant is shackled in the courtroom in front of the jury, which would likely create a presumption of prejudice on direct appeal, in a personal restraint petition, "a jury's brief or inadvertent glimpse of a defendant in restraints inside or outside the courtroom does not necessarily constitute reversible error. Such circumstances are not inherently or presumptively prejudicial and do not rise to the level of a due process violation absent a showing of actual prejudice." In re Davis, 152 Wn.2d 647, 697-98, 101 P.3d 1 (2004).

Passing glimpses of a defendant in restraints are insufficient on their own to find the existence of prejudice. In Gosser, the defendant moved for a mistrial on the basis that jailers removed his shackles in the corridor outside the courtroom, "presumably in the presence of at least some of the jurors." Gosser, 33 Wn. App. at 435. The trial court denied Gosser's motion. Gosser, 33 Wn. App. at 435. On appeal, we affirmed the denial, reasoning that "beyond [the] defendant's bare allegation, there is no indication in the record that the incident prejudiced the minds of the jurors against [the]

defendant." Gosser, 33 Wn. App. at 435-36. Division Three of this court reached the same conclusion, holding that a defendant's "mere appearance in handcuffs during jury selection [did] not indicate the incident inflamed or prejudiced the jurors against [the defendant]." State v. Early, 70 Wn. App. 452, 462, 853 P.2d 964 (1993) (internal quotation marks omitted).

Even a more prolonged viewing does not necessarily rise to the level of prejudice. Our Supreme Court concluded in State v. Clark, 143 Wn.2d 731, 776, 24 P.3d 1006 (2001), that the defendant was not prejudiced when the jury saw him shackled on the first day of voir dire and on the day the verdict was returned, but the defendant sat unrestrained throughout the trial. The court reasoned that "Clark's shackling on the first day of voir dire and the day of the verdict was harmless error beyond a reasonable doubt" because "in the minds of the jurors Clark's shackling on the first day of voir dire was more than logically offset by over two weeks of observing Clark in the courtroom without shackles." Clark, 143 Wn.2d at 776.

Here, jurors' brief view, if any, was of deputies removing Hassan's shackles following transport from jail, and Hassan does not dispute that he was never shackled during trial. Citing Davis, 152 Wn.2d at 677-78, Hassan argues that he is entitled to a reference hearing "to determine what jurors saw and how Hassan was prejudiced." Br. of Reply of Pet'r at 11. But Davis involved a defendant who was shackled during both the guilt and penalty phases of trial, not the "brief or inadvertent glimpse" at issue here. Neither Washington law nor the record here supports Hassan's contention that "the

suggestion of dangerousness from the shackles was highly prejudicial." Br. of Reply of Pet'r at 11.

Hassan's ineffective assistance of counsel claim likewise fails. According to Hassan's declaration, defense counsel was not present when jurors allegedly saw deputies removing his shackles, and he does not say he ever told his counsel about it. It was not ineffective assistance of counsel to fail to object to an alleged error of which counsel was unaware.

Hassan also alleges "enhanced security measures" violated his right to due process. He asserts that security officers sat so close to him that "he was reluctant to consult with counsel for fear that the officers could hear what was said." PRP at 15. He argues that by impairing his ability to consult with counsel during trial, these security measures interfered with his Sixth Amendment right to counsel and amounted to a structural error, requiring reversal. But this assertion, with only Hassan's statement in his declaration that this "made [him] very uncomfortable," does not entitle him to relief or to an evidentiary hearing on this claim. Because he does not support his constitutional claims with sufficient argument or citation to authority, we do not reach them. In re Pers. Restraint of Erickson, 146 Wn. App. 576, 191 P.3d 917 (2008); see also RAP 10.3(a)(6); State v. Johnson, 119 Wn.2d 167, 171 829 P.2d 1082 (1992) (declining review of constitutional issues unsupported by reasoned argument); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to

consider argument where not supported by reference to the record or citation to authority).

Lesser Included Instruction

Finally, Hassan argues that his counsel was ineffective for failing to request a jury instruction for the lesser included offense of assault in the second degree. PRP at 20. He contends that defense counsel never told him he could request such an instruction and that even though he maintained his innocence on both charges, he "still would only want to be convicted of the lesser charge rather than the greater charge." PRP at Appendix (Declaration of Ismail Hassan at ¶ 8).

In his declaration, trial counsel states that he "sought jury instructions that were an accurate statement of the law and which were helpful to Mr. Hassan's defense" and that he "[did] not recall what, if any, discussions" he had with Hassan "regarding the trial strategy and client controlled objectives as it pertained to requesting lesser included Assault in the Second Degree instructions." PRP at Appendix (Declaration of Peter Geisness at ¶ 14). Hassan acknowledges that he turned down a plea offer of assault in the second degree on count two of the charged offenses. But he asserts that he would have requested an instruction on the lesser offense if his counsel had discussed the matter with him. PRP at Appendix (Declaration of Ismail Hassan at ¶ 8; PRP at 20.

Under the test announced in State v. Workman, 90 Wn.2d 443, 584 P.2d 382 (1978), a "defendant is entitled to an instruction on a lesser included offense if (1) each element of the lesser offense is necessarily included in the charged offense; and (2) the

evidence in the case supports an inference that the defendant committed only the lesser crime." State v. Gamble, 137 Wn. App. 892, 905, 155 P.3d 962 (2007). Our Supreme Court has held that "the decision to exclude or include lesser included offense instructions is a decision that requires input from both the defendant and her counsel but ultimately rests with defense counsel." State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

"The decision to not request an instruction on a lesser included offense is not ineffective assistance of counsel if it can be characterized as part of a legitimate trial strategy to obtain an acquittal." State v. Hassan,[2] 151 Wn. App. 209, 218, 211 P.3d 441 (2009). "'The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" Grier, 171 Wn.2d at 34 (quoting Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)). In King, this court held that counsel was not deficient for failing to request a lesser included instruction on simple assault because "[i]t was an all-or-nothing tactic that well could have resulted in an outright acquittal." King, 24 Wn. App. at 501. "Where a lesser included offense instruction would weaken the defendant's claim of innocence, the failure to request a lesser included offense instruction is a reasonable strategy." Hassan, 151 Wn. App. at 220.

Even assuming that evidence supported an instruction on a lesser offense and the trial court would have given it if requested, we do not conclude that trial counsel's

---

[2] This case involved a different defendant, whose name was also Hassan.

failure to request it was below the standard of reasonableness. Hassan's defense was general denial. The defense theory was that the victims had misidentified Hassan as the shooter. It was not unreasonable for counsel to conclude that requesting an instruction for a lesser included offense would have undermined Hassan's claim of innocence. See State v. Mullins, 158 Wn. App. 360, 371-73, 241 P.3d 456 (2010) ("Plainly, Mullins made a conscious choice to pursue acquittal outright rather than conviction on the lesser offense."). Hassan does not establish ineffective assistance of counsel.

Hassan's personal restraint petition is denied.

FOR THE COURT: